IN THE MATTER OF THE APPLICATION OF HOWARD SMITH, PETITIONER, TO THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM FOR ACCIDENTAL DISABILITY RETIREMENT.

Argued September 28, 1970—Decided January 25, 1971.

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for appellant Board of Trustees of the Police and Firemen's Retirement System (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. Ralph A. Yacavino* argued the cause for petitioner-respondent (*Mr. Frank A. Palmieri,* attorney).

The opinion of the Court was delivered by

FRANCIS, J. We are concerned here with an injured fireman's right to accidental disability retirement pension benefits. The problem arose because the fireman obtained an award of workmen's compensation after his application for disability retirement had been filed but before the Board of Trustees of the Police and Firemen's Retirement System had reached its final decison granting the disability pension. The unusual circumstances which created the problem are detailed below.

Petitioner Howard Smith became a member of the West Orange Fire Department in 1950. At the inception of his employment, he enrolled in the Police and Firemen's Re-

tirement System and thereafter made whatever monetary contributions were required of him. On August 26, 1964, he suffered an accident arising out of and in the course of his employment and resulting in severe injuries to his left leg, knee and ankle. He has been unable to return to work since that date.

On November 25, 1964, pursuant to *N. J. S. A.* 43:16A-7, he filed an application with the Board for retirement on the ground that the August 26, 1964 leg injury totally and permanently disabled him "for the performance of his usual duty and of any other available duty in the department, which his employer is willing to assign to him." He requested that the pension become effective as of January 15, 1965. For some reason, not entirely clear from the record, on February 19, 1965 the application was denied. Thereafter on March 30, 1965 Smith took an administrative appeal from that denial. After a hearing on the appeal, the Board reversed its decision and on February 24, 1969, almost 47 months after the appeal was taken, it awarded the sought for pension, payments to begin May 1, 1968.

In the course of those 47 months, other significant circumstances complicated the situation. It was obvious that even if Smith was not entitled to a disability pension, he had a legitimate claim for benefits under the Workmen's Compensation Act. He had two years from the date of the accident within which to file a petition for such compensation, *N. J. S. A.* 34:15-51, and that period would have expired on August 26, 1966. Thus, if his contemplated administrative appeal from the pension denial was not successfully terminated before that date, his workmen's compensation remedy would no longer be available. To safeguard that remedy (even though the weekly compensation rate was $40 while the weekly pension rate would be $97.65), on March 29, 1965 he instituted the workmen's compensation action against the Town of West Orange. Obviously, protection of that remedy by his timely action was necessary. The record shows that when Smith unsuccessfully sought the disability

pension he had an obligation to support a wife and five minor children ranging in age from less than two and one-half to thirteen and three-quarters years of age. Moreover, the Town of West Orange which had been carrying Smith on its payroll discontinued payment of his salary as of October 1, 1965. On November 28, 1966, the workmen's compensation claim was heard and an award was made of 14-6/7 weeks compensation for temporary disability at $45 weekly and 178-3/4 weeks compensation for 65% permanent loss of the left leg at $40 weekly. It should be noted that this award was based upon a permanent *leg* disability and not a *total permanent disability*, even though the incapacity was such as to disqualify him permanently for work as a fireman.

As noted above, after reversing its earlier decision and granting the permanent disability pension, the Board of Trustees calculated that the date of last payment under the compensation award would be May 1, 1968. That date was fixed by the Board as the inception date of the disability pension benefits. The choice of the May 1, 1968 date created the controversy now before us. Smith's annual retirement pension amounts to $5,077.20 or $97.65 weekly, or $57.65 more weekly than his permanent disability workmen's compensation rate. The effect of the determination was to limit his benefits to the $40 weekly compensation rate until they expired on May 1, 1968, and to deny all recovery against the pension fund until that date. The Board's reason seems to have been that there can be no concurrent payment of both workmen's compensation and pension benefits.

Smith sought a review in the Appellate Division contending that the effective date of his retirement should be December 8, 1964, which marked the end of 14-6/7 weeks of temporary disability, or January 15, 1965, the date requested in his retirement application, or October 1, 1965 when the Town terminated payment of his full salary. The Appellate Division decided that the appropriate beginning date for pension payments was October 1, 1965 because the last date of regular salary payment was September 30, 1965.

In addition to holding that Smith was entitled to receive pension payments retroactively to October 1, 1965, the court ruled that he was entitled also to retain the concurrent workmen's compensation weekly benefits between October 1, 1965 and May 1, 1968. *In re Smith,* 108 *N. J. Super.* 315, 321 (App. Div. 1970). This Court granted the Board's petition for certification. 55 *N. J.* 593 (1970).

On this appeal, the Board cites no statute which in express terms controls the issue presented to us. Basically the argument is that existing related legislative enactments reveal an intention to bar the double recovery of workmen's compensation benefits and permanent disability pension.

The Board concedes that between 1913 and 1931 public employees earning $1200 or less annually could receive both workmen's compensation and a disability pension. *L.* 1913, *c.* 145. In 1931, the wage limitation was removed and compensation benefits became fully available to public employees. However, the Act imposed a restriction, namely, that "[t]he provisions of this act [the Workmen's Compensation Act] shall not apply to * * * any former employee who has been injured or disabled in line of duty and has been retired on pension by reason of such injury or disability." It went on to say that "[n]othing herein contained shall be construed as affecting or changing in any way * * * any provision of any retirement or pension fund now or hereafter provided by law." *L.* 1931, *c.* 355. In its present form, the statute says:

No former employee who has been retired on pension by reason of injury or disability shall be entitled under this section to compensation for such injury or disability; * * *. *N. J. S. A.* 34:15-43.

The Legislature has thereby declared in effect that when a public employee becomes permanently incapacitated for his work on account of an employment-connected accident and retires on a disability pension from that employment, he severs the employment relationship and assumes the status of a former employee. And it decreed that no such

retired person could thereafter obtain workmen's compensation benefits for his earlier accident.

The receipt of compensation and the effect thereupon of receipt of pensions are controlled by the pertinent statutory provisions and their relation to the circumstances of each case. *Flynn v. Union City,* 30 *N. J. Super.* 467 (Cty. Ct.), aff'd 32 *N. J. Super.* 518 (App. Div. 1954), certif. denied 17 *N. J.* 253 (1955). And since the purpose of *N. J. S. A.* 34:15–43 is to withhold benefits that ordinarily would go to public employees who suffer injury arising out of or in the course of their employment, it has been strictly construed. *Swan v. Board of Trustees of Teachers' Pension and Annuity Fund,* 85 *N. J. Super.* 226, 231 (App. Div. 1964). Consequently its bar against receipt of compensation and a pension arising out of the same accident does not apply to dependents of a deceased employee since it speaks in terms of a living employee, *Eckert v. New Jersey State Highway Dept.,* 1 *N. J.* 474 (1949) ; nor to a person on an ordinary retirement pension based on age and service, as distinguished from a work-connected disability allowance, *Pisapia v. City of Newark,* 47 *N. J. Super.* 353 (Cty. Ct. 1957) ; nor where a person had two public employments, one with a municipality and the other with a county, and he is receiving a workmen's compensation award from one and a disability pension from the other. *Loges v. Town of Newton,* 5 *N. J. Super.* 433 (App. Div. 1949), aff'd o. b., *sub nom. Kays v. Town of Newton,* 4 *N. J.* 356 (1950). Moreover, it is right and just that statutes allegedly designed to restrict pension allowances should be interpreted favorably to the public employee. He is required to contribute a percentage of his gross annual pay over his employment period in order to quality for it. Consequently, we agree that he should not be deprived of it except upon an express or implied legislative mandate which leaves no doubt of the purpose. *City Council of Augusta v. Young,* 218 *Ga.* 346, 127 *S. E.* 2d 904, 906 (1962) ; and cf. *Renshaw v. United States Pipe & Foundry Co.,* 30 *N. J.* 458, 466 (1959) ; *City and County*

of *San Francisco v. Workmen's Comp. App. Bd.,* 269 *Cal. App.* 2d 382, 74 *Cal. Rptr.* 810 (1969) ; *City of Lincoln v. Steffensmeyer,* 134 *Neb.* 613, 279 *N. W.* 272 (1938) ; *Shandy v. City of Omaha,* 127 *Neb.* 406, 255 *N. W.* 477, 479 (1934). A fair conclusion to be drawn from *N. J. S. A.* 34:15–43 and the cases construing it is that the Legislature intended to prohibit recovery of workmen's compensation if the injured employee has already been retired on an accident disability pension under *N. J. S. A.* 43:16A–7. Since, in this case, such compensation was paid before final approval of the pension for total permanent disability for the accident, *N. J. S. A.* 34:15–43, if literally applied, would not appear to be applicable. This is particularly so since the workmen's compensation allowance was not for total permanent disability but for 65% permanent loss of the injured leg, whereas the later pension approval was on account of total and permanent disability for Smith's work as a fireman. Also, prior to the time the compensation was awarded the Board of Trustees had rejected his claim for a disability pension.

Between 1931 and 1944 there was no statute in existence which expressly barred payment of workmen's compensation and disability pension if the compensation was sought and obtained first. Obviously payment of compensation benefits created problems. If a work-connected accident caused a percentage of permanent disability less than total, the person who received workmen's compensation therefor remained an employee during the term of the weekly payments. *Eckert v. New Jersey State Highway Dept., supra,* 1 *N. J.* at 478. Such an employee might well be back at his regular work and receiving his full salary in addition to the weekly compensation benefit through the period represented by the award for permanent disability. Conceivably, after the conclusion of such payments the disability produced by the accident might get progressively worse and justify additional separate awards at intervals. Assuming, for example, that the last separate award was for 85% of total permanent disability, that it was paid, and that subsequently the disability

reached total, could it have been argued successfully that if a pension for the total disability was then sought, the pension Board could have deducted the paid compensation or any part of it from the pension? It seems unlikely that such deductions would have been allowed.

Thus, it would appear that under the 1931 act an employee with a work-connected injury who came to total disability over a period of time could qualify for a substantial amount of workmen's compensation benefits before finally seeking a pension for such disability. Moreover, if he was able to work at his regular job between the dates of his successively increased awards of compensation, he would receive both his normal wages and the weekly compensation benefits. But such an injured employee who became totally disabled at once would be barred from workmen's compensation if he first sought and obtained his pension. If he elected to pursue his compensation remedy first (which he probably would not do unless the compensation rate was higher than the pension rate), it seems likely that the 1931 act would have prevented the later concurrent grant of a disability pension unless he waived workmen's compensation benefits.

There seems to be no legislative or administrative history or case law which throws any significant light upon the manner in which the Workmen's Compensation Act functioned vis-a-vis the pension act involved here after 1931 and prior to the 1944 legislation discussed hereafter.

In 1944 the Legislature adopted Chapters 253 and 255 which dealt with the problem of double benefits under the Workmen's Compensation Act and certain pension statutes relating to policemen and firemen. Section 10 of Chapter 253 provided that any compensation paid under the workmen's compensation law "to a member on account of a happening to the member shall be deducted from any pension or benefit payments to a member as provided" therein. If the compensation was paid in a lump sum, the pension benefits were to cease and be deducted until the deductions equalled the amount of such compensation. If the compensa-

tion was to be paid or was paid periodically, the amounts were to be deducted from the pension until the deductions equalled the amount of such compensation. This section became *N. J. S. A.* 43:16–14.

Chapter 255 of the Laws of 1944 was concerned with a municipal policemen and firemen pension fund which was maintained at the State level. Section 21 thereof (which became *N. J. S. A.* 43:16A–21) ordained that any workmen's compensation "agreed to or awarded and payable by the municipality * * * to a member or his beneficiary on account of the disability or death of the member shall be deducted from any allowance or benefit payments * * * on account of such disability or death as provided by this act." Such deductions were to be made from the pension in the same manner as that prescribed by Section 10 of Chapter 253 set out above.

Both Section 10 of Chapter 253 and Section 21 of Chapter 255 of the 1944 laws were repealed by Chapter 294 and Chapter 295, Laws of 1950. The reasons for the repeal are not clear. The introductory statements on both bills reveal at least one reason. They indicate that subsequent to the 1944 acts efforts had been made, inferentially by insurance carriers or public employers which had paid workmen's compensation benefits to policemen and firemen, to have those sums deducted from pension payments due such employees for total disability arising out of the same accident. See *R. S. Cum. Supp.* 43:16A–21, 43:16–14 (1950) ; and see *L. 1949, c. 220 ; Eckert v. New Jersey State Highway Depart., supra,* 1 *N. J.* at 480. Apparently, such claims would be predicated upon the cited sections of the 1944 laws which prescribed that workmen's compensation paid by the public employer should be deducted from the disability pension. Although the 1944 acts did not say what should be done with the deductions from the pension (*i. e.*, whether the fund could retain them or had to turn them over to the public employer or its insurance carrier), the theory of the public employer and its carrier seems to have been that the pen-

sion fund ought to be regarded under *N. J. S. A.* 34:15–40 as a third party also liable (by way of the pension) to the policeman or fireman for the total disability caused by the accident. Therefore, it was claimed that the workmen's compensation payments should be deducted from the pension and paid over to the public employer or its insurance carrier. The introducers' statements on the cited chapters of the 1950 laws show disagreement with such a thesis, saying that the position of the fund and a third party within the meaning of the Workmen's Compensation Act "are compellingly different and pension funds should not be subject to claims arising from an entirely different source" and that the fund "has no relevancy to his [the employee's] injury." Whatever the total motivation may have been it seems plain that at least one purpose was to protect the fund from treatment as such a third party and to deny access to the Fund by the employer or its carrier for purposes of recoupment of workmen's compensation benefits paid to the employee.

Upon the repeal of Sections 10 and 21 of the Laws of 1944 by Chapters 294 and 295 of the Laws of 1950 (effective July 3, 1950), the only provision in the law respecting the effect of payments of workmen's compensation on the public employee's right to a disability pension was that contained in *N. J. S. A.* 34:15–43. As already set forth, the latter statute barred an employee, who had sought and obtained an employment-connected accident disability pension from thereafter obtaining workmen's compensation benefits for the same disability. However, since the employee had been making mandatory contributions from his wages to provide his pension, it was arguable (and we do not decide the question) that the legislative intention, at least in cases where the compensable permanent disability was progressive in nature, was to permit the employee to have the workmen's compensation benefits up to the point when the disability became total and permanent, and upon his reaching total and permanent disability, to permit him

to obtain the disability pension without any deduction for compensation theretofore paid.

At any rate, whatever the effect of the 1950 repealer, the situation remained unchanged until 1967. By Section 30a of Chapter 250, Laws of 1967, (*N. J. S. A.* 43:16A–15.2 (effective December 18, 1967)) an employee who was receiving workmen's compensation benefits was to be considered "as if he were in the active service" and the public employer was directed to continue to make its own compulsory contribution to the pension fund and in addition the contribution of the injured employee, during the period covered by the workmen's compensation payments. The employer's total contribution was required to be based upon the employee's salary at the time the compensation payments began, was to be credited to the employee's pension account, and was to be treated as his contribution for all purposes.

Subsection b of Section 30 provides:

"No application for retirement benefits may be approved by the board of trustees *while the member, applying for such benefits, is in receipt of periodic benefits under the Workmen's Compensation Law.*" (Emphasis added.) *N. J. S. A.* 43:16A–15.2.

These same provisions of Chapter 250, Laws of 1967 had been added to the Public Employees' Retirement — Social Security Integration Act as *L.* 1966, *c.* 217 § 28, *N. J. S. A.* 43:15A–25.1, and to the Teachers' Pension and Annuity Fund — Social Security Integration Act as *L.* 1966, *c.* 218 § 22. The introducers' statements on both these latter acts specify as their purpose the clarification of the statutes respecting employees' receipt of workmen's compensation benefits. *R. S. Cum. Supp.* 43:15A–6 *et seq.,* 18:13–112.1 *et seq.* (1966). The clarification accomplished by these three enactments was that an employee injured in the line of duty cannot obtain approval of a total disability pension for the resulting injuries *while* he is receiving workmen's compensation payments for the same disability.

■ Our outline of the legislative history of the pertinent sections of the workmen's compensation and accidental disability pension acts has been set forth in the light most favorable to the public employee. Such an approach creates the proper setting in which to perform our duty to interpret the enactments most liberally toward him. But no matter how sympathetically the employee's interests are viewed, the judiciary cannot ignore the legislative intention which plainly emerges from the total statutory treatment of the subject. Such intention must be given sensible application in order to accomplish the indicated purpose and to avoid a bizarre result. In combination, the enactments involved here say that a former public employee who has retired on an accidental disability pension cannot be granted workmen's compensation benefits for the same disability, and if the employee elects to receive workmen's compensation initially no subsequent pension for the total disability arising from the accident can be approved for him while he is receiving compensation. In total effect they clearly reveal the lawmakers' intention not to allow a public employee to receive concurrent pension and compensation benefits for the same disability.

■ If Smith's application for the disability pension had been approved as of January 15, 1965 or, as the Appellate Division held, as of October 1, 1965 which, it now appears, should have been the case, obviously he would have become a "former employee" at that time by virtue of *N. J. S. A.* 34:15–43. Accordingly, he could not have successfully sought workmen's compensation thereafter. The Board of Trustees in reversing its initial position realized that under ordinary circumstances its decision would relate back to January 15, 1965, the pension inception date specified in Smith's original application. There is no dispute now that the disability requirement of the pension statute was met as of that date. However, determination of the beginning point of the pension payments was complicated by the interim receipt of

workmen's compensation by Smith for permanent leg disability between December 8, 1964 (when compensation for temporary disability ended) and May 1, 1968 which was computed to be the date of last payment of such benefits. In resolving the question, the Board took the view that to authorize pension payments back to either December 8, 1964, January 15, 1965, or October 1, 1965, the date of last payment of full salary by the Town, would mean receipt of double benefits, compensation and pension, between the inception date it selected and May 1, 1968. Then, being of the opinion that the Legislature by clear implication had banned such a double concurrent recovery and that therefore the Board would not have approved a pension for the same disability while compensation was being paid, it concluded that the pension payment should be withheld until May 1, 1968 when the compensation award terminated. This meant, of course, that Smith was being made to suffer a serious financial detriment because of an action, *i. e.,* the filing of a petition for workmen's compensation, which the denial of his pension application had forced him to take for his own protection. In our judgment, the Board's view was inequitable and overlooked the fundamental justice of the situation. The application for pension having been filed first, the ultimate grant thereof, although not made final formally until February 24, 1969, obviously signifies that the right thereto existed at least as of the date when the Town ceased paying Smith's full salary, *i. e.,* October 1, 1965. So the pension should be recognized as first in time and first in right. Consequently, the just resolution of the issue before us requires that the pension be treated as beginning retroactively as of October 1, 1965. Since there would have been no right to workmen's compensation had the pension begun as of that date, it follows that the weekly compensation benefits paid between October 1, 1965 and May 1, 1968 should be credited against the weekly pension and the difference paid to Smith (subject to a further adjustment to be

described). More specifically, the $40 weekly compensation payment (less the adjustment to be mentioned) should be deducted from the $97.65 pension rate and the balance remitted to him. This disposition puts the parties in the position they should occupy in justice and equity, and gives recognition to the implied legislative mandate against double benefits. See *DeLorenzo v. Board of Commissioners of City of Newark*, 134 *N. J. L.* 7 (E. & A. 1946); *Pirher v. Board of Public Works of South River*, 37 *N. J. Super.* 482, 484 (1955), certif. den. 20 *N. J.* 465 (1956).

Smith did not receive the full $40 weekly compensation benefit. It appears that the following counsel fees were assessed against him: $650 in the Workmen's Compensation Division and $500 on the employer's appeal to the Appellate Division and its petition for certification before this Court. The total of these fees should be credited against the deductions from his pension of the compensation payments he received. Moreover, it was necessary for him to engage counsel and to incur expenses for medical witnesses, etc. in order to prosecute the appeal to the Board of Trustees from the denial of the pension application. Therefore, in further mitigation of his obligation to give up the workmen's compensation received, he is entitled to the deduction of a reasonable counsel fee and of his necessary expenses in the appeal proceeding before the Board. If the parties cannot agree upon the amount of that credit, application may be made to us for the purpose. *Cf. Mason v. Civil Service Commission and City of Trenton*, 51 *N. J.* 115, 127, 129 (1968); *Mastrobattista v. Essex County Park Commission*, 46 *N. J.* 138 (1965).

For the reasons stated the judgment of the Appellate Division is modified to the end that the workmen's compensation payments for permanent disability for the period between October 1, 1965 and May 1, 1968, less the counsel fees and expense credits specified above, shall be deducted from Smith's pension. The portion of the judgment which

fixes October 1, 1965 as the beginning date of the pension is affirmed.[1]

*For affirmance and modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.

---

[1]After the argument of this appeal, the Legislature adopted Senate Bill No. 441 which amended *N. J. S. A.* 34:15–43 to provide that "any former employee who has been retired on pension by reason of any such injury or disability shall notwithstanding such retirement be entitled under this section to compensation for such injury or disability * * *." It has not yet been approved or disapproved by the Governor. A similar amendment (Senate Bill No. 391 ) was passed in 1969 by the Legislature. It was vetoed on January 13, 1970 by Governor Richard J. Hughes with a detailed message specifying the estimated financial burden which would result from its enactment.

There is no specific statement in Senate Bill No. 441 making the amendment to section 43 of the Workmen's Compensation Act retroactive. It may be noted also that although section 43 was changed in the manner indicated, *Chapter* 250, *L.* 1967, *N. J. S. A.* 43:16A–15.2, of the Police and Firemen's Retirement System Act remains unchanged. It says, as noted above, that "No application for retirement benefits may be approved by the board of trustees *while the member, applying for such benefits, is in receipt of periodic benefits under the Workmen's Compensation Law.*" (Emphasis added.) The inconsistency between this quoted section and Senate Bill No. 441 apparently was overlooked by the Legislature.

If Senate Bill No. 441 is approved by the Governor, we will entertain an application by petitioner Smith, if made within 30 days thereafter, for rehearing to reconsider the effect of the then new law on the present case.