232 N.J. Super. 491 (1989)
557 A.2d 705
ANNA SZCZEPANIK, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, PUBLIC EMPLOYEES' RETIREMENT SYSTEM AND THE COUNTY OF UNION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1988.
Decided May 2, 1989.
*493 Before Judges GRUCCIO and LANDAU.
Samuel J. Halpern argued the cause for appellant.
Patrice M. Connell, Deputy Attorney General, argued the cause for respondent Public Employees' Retirement System (W. Cary Edwards, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Patrice M. Connell on the brief).
David J. Issenman, Deputy County Counsel, argued the cause for respondent County of Union (Robert C. Doherty, County Counsel, attorney; David J. Issenman on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This matter comes before us on transfer from the Law Division. Petitioner-appellant Anna Szczepanik, a former Union County employee, sought by action in lieu of prerogative writs to compel the State Division of Pensions (Division), Public Employees' Retirement System (PERS) to enforce, and the County of Union to make, contributions to the Retirement System on her behalf for the duration of Workers' Compensation benefits, received by reason of a job-related accident which rendered her permanently partially disabled. The trial judge decided that the principal legal issue in the case arose by reason of a final determination of PERS, and so transferred the matter to the Appellate Division. R. 1:13-4(a); 2:2-3(a)(2).
Although the case presents several procedural questions, we have concluded that the substantive issue merits consideration and that, contrary to the opinion of the PERS board and staff, Union County should have been required to pay pension contributions on behalf of Szczepanik while she received Workers' Compensation payments, thereby enabling her to complete the *494 ten years of service necessary to retire on an ordinary disability pension.

FACTS
Anna Szczepanik, a clerk transcriber for Union County, was enrolled in PERS since September 1976. On November 20, 1980, she was injured in a job-related accident. Thereafter, she instituted a Workers' Compensation proceeding. At her request, she was placed on extended sick leave without pay after the accident. Although Szczepanik applied for temporary and permanent Workers' Compensation disability benefits while on leave of absence, a final compensation award was not made until April 24, 1986. The Workers' Compensation judgment awarded her 104 and 2/7 weeks of temporary disability and 225 weeks of permanent partial disability, for a total of 329 and 2/7 weeks of Workers' Compensation benefits. She did not receive an award for permanent total disability.
On April 10, 1985, Szczepanik also filed an application with PERS for accidental disability retirement benefits. When this was denied on July 22, 1985, she appealed the denial and received a hearing before an Administrative Law Judge (ALJ) during the latter part of 1986. On December 3, 1986, (after the Workers' Compensation award) the ALJ issued an opinion which recommended that the PERS denial of Szczepanik's application for accidental disability retirement benefits be upheld, notwithstanding the Workers' Compensation determination of work-connected disability, because Szczepanik had not suffered a "traumatic event" within the meaning of N.J.S.A. 43:15A-43.[1] The ALJ's decision recommended, however, that the application be treated as one for ordinary disability benefits under N.J.S.A. 43:15A-42, and that Szczepanik receive an ordinary disability pension.
*495 In order to qualify for ordinary disability benefits, N.J.S.A. 43:15A-42 requires among other things, that the member be under 60 years of age, and have "ten or more years of credit for New Jersey service." Under N.J.S.A. 43:15A-25.1(a), if a PERS member "receives periodic benefits payable under the Workmen's Compensation Law during the course of his active service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer.... The moneys paid by the employer shall be credited to the member's account in the annuity savings fund and shall be treated as employee contributions for all purposes. The employer will terminate the payment of these moneys when the periodic benefits payable under the Workmen's Compensation Law are terminated or when the member retires."
Thus, as the combination of Szczepanik's active working period between 1976 and 1980 with 329 2/7 weeks of Workers' Compensation benefits was deemed to extend Szczepanik's active service to produce ten or more years of credit, the ALJ concluded that ordinary disability retirement was appropriate.
Although the Board of Trustees of PERS (Board) received this initial ALJ determination on December 5, 1986, it did not render a final decision within the 45-day period as prescribed by N.J.S.A. 52:14B-10(c). On January 29, 1987, the Board decided to accept the ALJ's recommendation to deny accidental disability retirement, but rejected his recommendation that Szczepanik be granted ordinary disability retirement. By letter dated February 7, 1987, this was communicated to Szczepanik's attorney. The "final administrative determination" letter, including findings of fact and conclusions of law, however, was dated February 24, 1987. This February 24th letter was inconclusive on the issue of ordinary disability in that it left open the opportunity for Union County to make "appropriate employer contributions pursuant[] to N.J.S.A. 43:15A-25.1(a)." The letter advised: "Only when such payments have been made and credited into Mrs. Szczepanik's account will she have obtained *496 the 10 years of service necessary to qualify for Ordinary Disability benefits."[2]
Prior to the final Workers' Compensation determination, and the Board's determination, Union County challenged Szczepanik's employee status in another way. On November 19, 1985, the Chief Probation Officer of Union County requested that she submit her resignation by December 31, 1985, warning that she would otherwise be terminated. This letter was in response to Szczepanik's request for an extension of her sick leave of absence without pay. Szczepanik responded on December 28, 1985, that she was still under doctor's care and that she refused to submit a resignation. The County then sent her a preliminary notice of disciplinary action dated January 15, 1986, which charged her with absence without leave and advised that the County would regard her as having resigned, not in good standing effective December 2, 1985. On January 29, 1986, Szczepanik responded, submitting her resignation in good standing and pointing out that her inability to work was the result of a work-related fall requiring continued doctor's care. Szczepanik stated that if her resignation in good standing was not accepted, she would request a departmental hearing. By letter dated February 3, 1986, Union County purported to accept her resignation in good standing effective January 29, 1986.
Our attention turns to the reasons given by the Board and staff for rejecting the ALJ recommendation that Szczepanik be deemed qualified for an ordinary disability pension.[3] On February *497 26, 1987, the Division wrote to Union County requiring that it pay pension contributions on behalf of Szczepanik for the period during which she received temporary disability benefits under Workers' Compensation. That letter, however, also advised the County that it could voluntarily make contributions on petitioner's behalf, at its option, for the period during which she received permanent disability compensation benefits. Interestingly the brief submitted on behalf of PERS now says that this advice was incorrect and that only an award of permanent total disability, as distinct from an award of permanent partial disability, will relieve an employer of its obligation under N.J.S.A. 43:15A-25.1 to make contributions to PERS for an employee who received a Workers' Compensation award.[4]
In response to the February 1987 correspondence, the County advised the Division that it would make no further employer contributions, notwithstanding N.J.S.A. 43:15A-25.1, because Szczepanik had terminated her employment with the County effective January 29, 1986. This was communicated to Szczepanik's attorney by the Division in July 1987. On August 27 the Division sent Szczepanik's attorney a copy of a February 1986 memorandum which informed public employers that employer contributions would not be mandated if an employee was receiving total and permanent Workers' Compensation benefits, or if the employee resigned or was validly terminated. That memorandum, generated by reason of an unreported Law Division opinion, had been sent to certifying officers of all public employers.
*498 Thereafter, on September 15, 1987, Szczepanik's attorney filed a complaint in lieu of prerogative writ in the Law Division seeking to compel Union County to make contributions to PERS for the period of time Szczepanik received Workers' Compensation benefits, and to compel PERS to assess such amounts against the County. After its transfer to the Appellate Division, we denied a PERS motion to dismiss the appeal as untimely.

PROCEDURE
Before turning to the substantive issues, we must note and address several procedural points. Both Union County and PERS call our attention to the requirement that an appeal from a final administrative agency decision must be filed within 45 days from the date of service of that decision, subject to the court's power to extend the period to file an appeal for an additional 30 days. R. 2:4-1(b); R. 2:4-4(a). They urge that the administrative agency decision which is the subject of the present appeal was received on March 2, 1987, and that it contained unmistakable written notice of its finality. It is also argued that Szczepanik's attorney was told by Union County on July 10, 1987, that it would not make employer contributions to PERS on her behalf, and even this date was well over 45 days before the Law Division complaint was filed on September 15, 1987.
We note, however, that it was not until an August 27, 1987 letter that Szczepanik's attorney was advised by the Division that it would not force Union County to make sufficient pension contributions on her behalf to establish the requisite ten years of service credit for ordinary disability retirement benefits under N.J.S.A. 43:15A-42. This letter enclosed the above-referenced memorandum of February 1986, outlining the Division's changed policy respecting employer liability for pension contributions on behalf of total and permanently work-disabled employees.
*499 In DeNike v. Bd. of Trustees, Employees Ret. System of N.J., 34 N.J. 430, 434, 436 (1961), the Supreme Court determined that state agencies must speak out with unmistakable finality in order to assert the 45-day bar, and declined to consider a letter containing insufficient findings of fact and conclusions of law as service of notice of such unmistakable finality.
In the present case, no findings of fact were set forth in the PERS determination to support the conclusion that Szczepanik was not entitled to have contributions made on her behalf. This is compounded by the present admission in the PERS brief that it gave erroneous instructions to Union County respecting the obligation to pay pension contributions for the period following Szczepanik's receipt of temporary disability benefits under Workers' Compensation. Under the PERS assumption as at February 26, 1987, Szczepanik would have been entitled to receive contributions on a mandatory basis inasmuch as she was not permanently and totally disabled under the Workers' Compensation decision. It was only the subsequent information respecting the "voluntary resignation" of Szczepanik in January 1986 that changed the basis for the PERS conclusion. This, however, was done by staff action, and not, as far as we can determine from the record, by way of a modification by the PERS Board of its earlier opinion. No findings could have been made by it upon this record without consideration of the circumstances of Szczepanik's termination. It is clear that the Board never considered whether there was a valid termination of employment, consistent with its policies and the policy of N.J.S.A. 43:15A-25.1. As late as its letter of July 8, 1987, received on July 10, 1987, PERS only stated that it was "apparently" the County's position that Szczepanik had terminated her employment effective January 29, 1986. It was not clear from the letter what the Division intended to do about post-termination pension contributions.
Prior to transferring the within matter, the trial judge stated, "So, on receipt of the August 27th letter, you, now, know you *500 have a final administrative determination, and upon which [sic] it rests."
The within matter presents a question which affects all public employees who receive Workers' Compensation benefits for permanent job-caused disability, by reason of the interpretation given by PERS to N.J.S.A. 43:15A-25.1.
We believe that the determination is now sufficiently final to warrant appellate review, but that this finality was not established until the end of August 1987, well within the 45-day period within which the in lieu action was commenced in the Law Division. Accordingly we reject the respondents' arguments that we decline to entertain the substantive questions here presented.[5]

INTERPRETATION OF N.J.S.A. 43:15A-25.1
Szczepanik says that N.J.S.A. 43:15A-25.1 clearly mandated that contributions to the pension fund be made on her behalf and that the PERS refusal to enforce this provision was illegal, arbitrary and capricious. Had such contributions been made for the duration of the Workers' Compensation disability payments, these would have been sufficient to qualify her for ordinary disability benefits under N.J.S.A. 43:15A-42. She also urges that her resignation in January 1986 was invalid because it was improperly obtained, and that she should not be barred thereby from eligibility for ordinary disability retirement. No appeal was taken from the denial of accidental disability pension benefits.
*501 In fairness to PERS, we note that its present interpretation of N.J.S.A. 43:15A-25.1 occurred only after an unpublished opinion of the Law Division specifically reversed and overruled its prior practice and interpretation. The Law Division opinion held that as public policy disfavors continued employment of workers who have been determined to be permanently and totally disabled or unfit, public employers were required to "weed out" those people who are physically unable to perform their duties. Accordingly, it was determined that a public employer need not make pension contributions "on behalf of a former employee who receives any kind of benefits" or "a present employee who receives total permanent disability benefits."
Based upon this opinion, the Division changed its historic interpretation of N.J.S.A. 43:15A-25.1 and advised public employers that contributions were not required on behalf of former or present employees who receives Workers' Compensation benefits for permanent total disability. The Division also advised public employers that they were not required to make pension contributions on behalf of employees who had resigned or had been validly terminated. Recognizing that "[t]his is a dramatic change from the past," the Division expressed the "hope that employers will proceed compassionately in dealing with employees injured on the job under this new policy." As indicated by correspondence with Union County in the Szczepanik case, this policy was carried out in such a manner as to permit a public employer to make optional retirement fund contributions for permanently work-disabled employees during the period when they received Workers' Compensation benefits, although the Division had previously construed those contributions as required by statute.
We have reviewed the opinion in the case which caused the Division to alter its previous interpretation and practice. Its rationale drew primarily upon our opinion in Mercer County v. State, Dept. of Treasury, 193 N.J. Super. 229 (App.Div. 1984).
*502 Mercer County was a case in which the public employer initiated an involuntary disability retirement proceeding respecting a 57-year old employee who was eligible for such disability retirement, but who sought to receive Workers' Compensation benefits, and to forestall her retirement until she reached the age of 60, when she would have been eligible for age and service retirement and could receive both that larger pension as well as the Workers' Compensation permanent total disability benefits, without offset. Id. at 231. Mercer County was a chapter in a line of cases which considered the relationship between disability retirement benefits and Workers' Compensation benefits, and which held that double benefits could not be received on account of a single disability. See id. at 234-235; Conklin v. City of East Orange, 73 N.J. 198 (1977); In re Application of Howard Smith, 57 N.J. 368 (1971).
In Mercer County, we said:
A public employer must be permitted to employ a full complement of employees who are physically able to perform their duties. The continued employment of a permanently and totally disabled worker is patently contrary to the public interest. The conflict between the public interest and the interest of the disabled employee is accommodated by the statutory provision according him a disability pension. It was never, however, the legislative intention to enlarge the scope of that accommodation by permitting a permanently and totally disabled employee to remain employed, at his option, until he exhausts workers' compensation benefits or qualifies for age and service retirement. We are persuaded that the amendment of N.J.S.A. 43:15A-25.1 does not express any contrary intention. [193 N.J. Super. at 236].
The holding in Mercer County thus prevented a permanently and totally disabled employee from exercising an option to compel the public employer to make contributions until he reached a status where he could frustrate the policy against double benefits, as well as the strong policy in favor of able-bodied public employees.
The present case is not analogous. Apart from the fact that Szczepanik has not been adjudicated totally disabled, her application would result in no double benefits. Retirement for ordinary disability would result only in her being able to choose the more advantageous of Workers' Compensation or disability *503 retirement benefits. Unlike the situation in Mercer County, the result here urged by PERS and Union County would afford no accommodation between the interest of the disabled employee and the public interest through the means of awarding a disability pension. The actions of PERS and the County instead result in "weeding out" Szczepanik, who is not eligible for accidental disability retirement because her work-related accident did not involve an independently created "great rush of force" under Kane, yet deny her the benefits of an ordinary disability retirement.
This interpretation of N.J.S.A. 43:15A-25.1 does not accord with more relevant legislative and judicial policy pronouncements. As stated in Conklin, 73 N.J. 198 (1977), the statutory purpose is to avoid double recovery for the same disability, but nonetheless to allow the employee the more advantageous of the respective benefits. The Supreme Court held in Smith:
[I]t is right and just that statutes allegedly designed to restrict pension allowances should be interpreted favorably to the public employee. He is required to contribute a percentage of his gross annual pay over his employment period in order to qualify for it. Consequently, we agree that he should not be deprived of it except upon an express or implied legislative mandate which leaves no doubt of the purpose. [57 N.J. at 374 (emphasis added)].
We do not see evidence that the Legislature intended that public employees who are injured on the job may be precluded from qualification for ordinary disability benefits by construing the language of N.J.S.A. 43:15A-25.1 as optional rather than mandatory as it relates to making contributions during the disabled employee's active service. In Smith, 57 N.J. at 379, the Supreme Court considering N.J.S.A. 43:15A-25.1 in pari materia with N.J.S.A. 43:16A-15.2, a police and firemen pension provision, concluded that an employee who was receiving Workers' Compensation benefits was to be considered "as if he were in the active service" and the public employer was directed to make its own compulsory contribution to the pension fund together with the contribution on behalf of the injured employee, during the period covered by the Workers' Compensation benefits. N.J.S.A. 43:15A-25.1 similarly provides that the *504 member for whom the employer is making such payments should be considered as if he were in the active service.
The Legislature gave further evidence of this policy to favor members of the PERS who are disabled due to injuries arising out of and in the course of employment by amendments to N.J.S.A. 43:15A-108. There for purposes of various death benefits such a person is deemed to be an active member when not engaged in gainful occupation, if the person has not retired or terminated his membership.
Finally, until its practice was reversed by the unreported Law Division case, PERS itself would have interpreted N.J.S.A. 43:15A-25.1 to require payments by the public employer during the period when Szczepanik received Workers' Compensation benefits, until the earlier of the termination of those benefits or her qualification for ordinary disability retirement. Such continued interpretation and practice by the agency which administers a statute is entitled to great weight. In re Application of Saddle River, 71 N.J. 14, 24 (1976).
We believe that this interpretation, consistent with the recommendations of the ALJ, represents the correct accommodation of the interest of the public and the interest of workers disabled in the public employ. It also reflects the interpretive policy mentioned in Smith and Conklin.
What was the purpose of N.J.S.A. 43:15A-25.1, if not to require mandatory payments of pension contributions by the employer for a member of the retirement system in the shoes of Szczepanik? Those eligible for accidental disability pensions by reason of a work-connected accident are protected by N.J.S.A. 43:15A-43. Those who already have 10 years of credited service, and are under 60, may retire on ordinary disability if unable to work, or be mandatorily so retired by the public employer under the Mercer County doctrine. Logically, public employees such as Szczepanik, who are injured on the job, under 60, unable to work, but determined to be eligible for Workers' Compensation benefits while lacking 10 years of past *505 credited service, are the intended beneficiaries of this statutory language. Legislation should not be interpreted so as to achieve a meaningless result. Evans v. Ross, 57 N.J. Super. 223 (App.Div. 1959), certif. den. 31 N.J. 292 (1959).
Neither do we view this interpretation to require that public employers be prevented from hiring permanent replacements while mandatory payments under N.J.S.A. 43:15A-25.1 are being made. The public employer is not required to pay the disabled employee's salary; only the pension contribution.
Moreover, the effect of the policy presently enunciated by PERS is to make it discretionary with public employers whether to make voluntary contributions on behalf of employees who were rendered permanently and totally disabled in the course of employment. (We are not certain whether the concession in the PERS brief signals that it will hereafter be deemed mandatory that public employers make such contributions on behalf of such employees who are only permanently partially disabled.) While not integral to our holding, we are bound to observe that this optional policy formulation, devoid of any guiding statutory standard, raises profound constitutional questions of invalid delegation of legislative authority, denial of equal protection of the laws, and violation of the anti-donative provision of Article VIII, Section 3, Paragraph 2 of the New Jersey Constitution.
The respondents argue that should we determine that statutory contributions were required during the period of Szczepanik's active service encompassed by her receipt of Workers' Compensation benefits, such active service may nonetheless be validly terminated by unilateral action of the employer for inability to work, or by resignation of the employee. They suggest that the issue of coercion of Szcepanik's "voluntary" resignation must be the subject of an independent hearing on remand. We disagree.
The language of N.J.S.A. 43:15A-25.1(a) is plain: "The employer will terminate the payment of these moneys when the *506 periodic benefits payable under the Workmen's Compensation Law are terminated or when the member retires." It would be anomalous to interpret this unambiguous provision to permit the employer to circumvent it by merely firing the work-disabled employee because he or she is unable to perform the job. What would be the point of requiring these payments under N.J.S.A. 43:15A-25.1? As to Szczepanik's "voluntary" resignation, it is unnecessary for us to resolve formally the issue of invalidity by reason of duress. See Gobac v. Davis, 62 N.J. Super. 148 (Law Div. 1960). Were we required to do so, no remand would be necessary, as the record leaves little doubt that her resignation was submitted in response to a written ultimatum which made resignation the only alternative to termination "not in good standing."
It is, of course, theoretically possible that a public employee, motivated by independent wealth or other valid considerations, may voluntarily elect to waive the statutory right to payments under N.J.S.A. 43:15A-25.1 when resigning employment. Mindful of the policy of that statute, as here interpreted, it should not be assumed that a resignation alone constitutes such a waiver of statutory rights unless it clearly and expressly so states. Certainly, we will not assume such waiver on the facts surrounding Szczepanik's resignation so shortly before she would otherwise have qualified for ordinary disability retirement by reason of the statutorily-required pension contributions.
We reverse and remand to the Board with directions that an order be issued compelling Union County to pay the contributions on behalf of Szczepanik required under N.J.S.A. 43:15A-25.1, as interpreted herein, for the period of her Workers' Compensation benefits, and until her application for ordinary disability retirement is granted under N.J.S.A. 43:15A-42. As her eligibility for disability retirement under that statute is not otherwise contested, it shall be processed forthwith.
NOTES
[1] See Kane v. Board of Trustees, Police & Firemen's Ret., 100 N.J. 651 (1985) for a discussion of "traumatic event."
[2] We read the record and the briefs to indicate that the respondents do not question Szczepanik's disability. Rather, her eligibility for continuing contributions by the County, and thus her 10-year service qualification for ordinary disability is at issue.
[3] See Formal Opinion of the Attorney General, 1964, No. 9, which authorizes such approval without further application when a person eligible for ordinary disability retirement has unsuccessfully applied for accidental disability retirement.
[4] Except for consideration of the impact of her January 1986 resignation, this concession by PERS would render Szczepanik eligible for ordinary disability retirement, and require the County to pay contributions on her behalf. The workers' compensation judgment adjudicated her to be permanently partially disabled. We prefer not to rest our decision on this distinction, which we interpret to be a good faith attempt by PERS to try to comply with the mandate of N.J.S.A. 43:15A-25.1 without running afoul of an earlier unreported judicial decision, discussed infra.
[5] Although not raised by either party, we feel compelled to observe that even the earliest evidence of a final decision by PERS (the February 24, 1987 "final administrative determination") occurred more than 45 days after receipt of the recommendations from the administrative law judge. See N.J.S.A. 52:14B-10(c). As neither party has raised the issue, and as we deem the substantive issue of sufficient public importance for it to be directly addressed, we do not rest our decision upon this statutory provision. To do so, however, would also result in granting ordinary disability retirement eligibility status to Szczepanik.