732 A.2d 517

ANNIE JAMES, PETITIONER–APPELLANT, v. BOARD OF
TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT
SYSTEM, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 3, 1999—Decided April 20, 1999.

Before Judges STERN and WECKER.

*Samuel J. Halpern*, argued the cause for appellant.

*Denise M. Crump*, Deputy Attorney General, argued the cause for respondent (*Peter Verniero*, Attorney General, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel, *Ms. Crump*, on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Petitioner, Annie James, appeals from a final administrative determination of the Board of Trustees of the Public Employees' Retirement System (PERS) denying her request to file an application for an accidental disability retirement pension pursuant to *N.J.S.A.* 43:15A–43. That statute permits "[a] member" who is less than 65 and who is "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties," to receive an accidental disability retirement pension. Petitioner applied for such a pension on February 21, 1997. However, the Board adopted the initial decision of the ALJ holding that her application was properly refused by the Division of Pensions because it was untimely. We agree and therefore affirm.

Petitioner was employed at the Woodbridge Development Center from May 30, 1979, until she was terminated for abandoning her job on December 8, 1994. Her termination was affirmed by

the Merit System Board in August 1996 on the recommendation of an ALJ, and petitioner did not appeal that decision. James had been injured on the job on May 4, 1994, and was granted extended sick leave and additional unpaid leave authorized through November 30, 1994. When she did not return to work for five days after November 30, she was terminated. Pension contributions were made to her account through December 31, 1994.

Petitioner applied for workers' compensation benefits, and her claim was resolved by settlement on May 20, 1997. Temporary benefits were awarded for the period through June 30, 1994, when she was initially ordered back to work. Those benefits were apparently offset against her sick leave benefits, and are not at issue here. James was also awarded permanent partial disability workers' compensation benefits, pursuant to *N.J.S.A.* 34:15–1 *et seq.*, based upon a finding of a ten percent disability, resulting in an award calculated pursuant to statute on the basis of sixty weeks at $123 a week, for a total award of $7,380. The award referred to sixty weeks covering the period June 30, 1994, through August 23, 1995.

The Board denied petitioner's application because *N.J.S.A.* 43:15A–43 allows an application for the accidental retirement benefit only to a "member" of the pension system, and the pension law further provides that "membership of any person in the retirement system shall cease if he shall discontinue his service for more than two consecutive years." *N.J.S.A.* 43:15A–7e. The Board concluded that petitioner's membership in PERS had terminated as of December 31, 1996, two years after the last pension contribution to her account, and approximately two months before petitioner filed for accidental disability on February 21, 1997. Thus the Board concluded she was no longer a member of PERS after December 31, 1996, and her February 21, 1997, application was untimely.

Petitioner contends that because she received a permanent workers' compensation award calculated on the basis of sixty weeks of employment, the provisions of *N.J.S.A.* 43:15A–25.1a

(hereinafter § 25.1a) required Woodbridge to make pension contributions on her behalf through August 23, 1995, and she remained a "member" of PERS for two years. Petitioner relies upon *Szczepanik v. Department of Treasury,* 232 *N.J.Super.* 491, 557 *A.*2d 705 (App.Div.1989) in support of her contention.

In the alternative, petitioner contends that it was an abuse of discretion for the Board not to hold that the two-year membership continuation period pursuant to section 7e of the pension law should have been tolled on equitable grounds, relying upon *Steinmann v. Teachers Pension and Annuity Fund,* 116 *N.J.* 564, 562 *A.*2d 791 (1989) (4–3 decision). Petitioner claims that she was not expected to make a timely application until after the Merit System Board upheld her termination on March 6, 1996, and her worker's compensation claims were resolved on May 20, 1997. As defendant points out, petitioner knew what her eligibility was and knew the effect of her termination in ample time to have filed in a timely fashion either for the accidental disability retirement she now seeks or for ordinary disability retirement pursuant to *N.J.S.A.* 43:15A–42.

■ Thus the issue squarely presented by this appeal is whether James' employer was required by § 25.1 to make pension contributions only for the period for which she was awarded temporary workers' compensation disability benefits, which it did, or also for the additional sixty weeks' permanent partial disability award she received, such that she remained a member of PERS until at least February 21, 1997, when she applied for an accidental disability retirement pension. Section 25.1a of the pension law provides:

> [I]f any member of the retirement system receives periodic benefits payable under the Workers' Compensation Law during the course of his active service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer.

PERS agrees that whether James' application was timely turns upon whether Woodbridge was obligated to pay, and PERS to demand payment of, pension contributions for James' account through August 23, 1995. The answer to that question requires

interpretation of § 25.1a, specifically, whether a workers' compensation permanent partial disability award constitutes "periodic benefits ... in lieu of ... normal compensation."

*N.J.S.A.* 43:15A–25.1a requires a public employer to pay into the retirement system the "regular salary deductions" for any member of PERS who "receives periodic benefits payable under the workers' compensation law during the course of his active service, in lieu of his normal compensation...." PERS contends that only the receipt of temporary workers' compensation benefits are "in lieu of ... normal compensation" and that PERS contributions are not required for any period used to calculate a permanent partial award. PERS therefore rejects petitioner's contention that her sixty week award for permanent partial disability, calculated from June 30, 1994, through August 23, 1995, effectively continued her active membership in PERS through August 23, 1995.[1]

The premise of respondent's position, with which we agree, is that temporary disability provided by workers' compensation is to replace wages until the employee either recovers or reaches the maximum benefit of treatment, such that his permanent disability can be evaluated; whereas a permanent disability award, whether partial or total, is to compensate the employee for some physical damage or loss of bodily function. The amount to be paid as a permanent disability award is calculated by reference to weeks of pay under the workers' compensation statute. That method is merely a tool, and does not turn a damage award into wage replacement.

We find support for our interpretation in the statutory definition of permanent partial disability:

"Disability permanent in quality and partial in character" means a permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be

---

[1] The two-year period set forth by *N.J.S.A.* 43:15A–7e would then run through August 23, 1997, and petitioner's February 21, 1997 would be timely.

> considered shall be whether there has been a lessening to a material degree of an employee's working ability. Subject to the above provisions, nothing in this definition shall be construed to preclude benefits to a worker who returns to work following a compensable accident even if there be no reduction in earnings.
> [*N.J.S.A.* 34:15–36.]

This definition is inconsistent with an interpretation of "periodic benefits payable ... in lieu of his normal compensation." Such payment is made for the bodily injury, as actual "reduction in earnings" is not a requirement.

It has been noted without dispute that the workers' compensation statute defines permanent total disability and permanent partial disability, *N.J.S.A.* 34:15–36, whereas temporary disability is defined only by context. *See Outland v. Monmouth–Ocean Education Service Commission,* 154 *N.J.* 531, 546, 713 *A.*2d 460 (1998) (4–3 decision) (Handler, J. dissenting). In *Outland,* a sharply divided Court found a teacher eligible for temporary workers' compensation disability benefits to replace wages the teacher could have earned elsewhere during the school summer vacation. In dissent, analyzing the nature of temporary benefits under the workers' compensation law, Justice Handler cited several cases describing such benefits as "in lieu" of wages or salary:

> Such a basic rule, that an employee is not temporarily disabled if the employee is not absent from work and thus losing wages from that work, has been repeated numerous times by the courts of New Jersey. *See, e.g., Young v. Western Elec. Co.,* 96 *N.J.* 220, 226, 475 *A.*2d 544 (1984) (*"temporary disability compensation ... payments are in lieu of those wages"*); *Ort v. Taylor–Wharton Co.,* 47 *N.J.* 198, 208, 219 *A.*2d 866 (1966) ("[T]emporary disability represents a partial substitute for loss of current wages."); *Gorski v. Town of Kearny,* 236 *N.J.Super.* 213, 215, 565 *A.*2d 415 (App.Div.1989) ("Temporary disability benefits are paid in lieu of salary."); *Electronic Assocs., Inc. v. Heisinger,* 111 *N.J.Super.* 15, 20, 266 *A.*2d 601 (App.Div.1970) ("Petitioner here is entitled to no award for temporary disability because she suffered no current wage loss as a result of an ailment attributable to her occupation."); *General Motors Acceptance Corp. v. Falcone,* 130 *N.J.Super.* 517, 520, 327 *A.*2d 699 (Dist.Ct.1974) ("The award is 'in lieu of wages.' ") (quoting *Williams v. Newark Dept. of Welfare,* 43 *N.J.Super.* 473, 477, 129 *A.*2d 56 (Cty.Ct.1957)); *Worthington v. Plainfield Bd. of Educ.,* 23 *N.J. Misc.* 14, 19, 40 *A.*2d 9 (Dept. Labor 1944) ("[P]etitioner is not entitled to any temporary disability [benefits], there being no lost compensable time."); *Krov v. Centaur Const. Co.,* 18 *N.J. Misc.* 593, 596, 15 *A.*2d 619 (Dept. Labor 1940) ("The petitioner having lost no time from his work, is not entitled to compensation for temporary disability."). The major treatise on Workers' Compensation is in accord with this proposition.

*See* 1C Arthur Larson, *Larson's Workmen's Compensation Law* § 57.12(b) at 10–19 (1993) ("Temporary total ... and temporary partial occasion relatively little controversy, since they are ordinarily established by direct evidence of actual wage loss.")

[*Id.* at 547, 713 *A*.2d 460 (emphasis added).]

The distinction between benefits paid as wage replacement and benefits to compensate for physical or psychological impairment has been recognized by our Supreme Court. As Justice Schreiber wrote for the Court in *Young v. Western Electric Company, Inc.*, 96 *N.J.* 220, 225–26, 475 *A*.2d 544 (1984) (Division of Workers' Compensation has jurisdiction to grant set-off for disability pension benefits but not for retirement pension benefits):

The Compensation Act, *N.J.S.A.* 34:15–1 to –128(Act), authorizes judges of compensation to fix the amount that the employer shall pay the employee, *N.J.S.A.* 34:15–49, according to the statutory schedule, *N.J.S.A.* 34:15–12, for personal injuries caused by accidents "arising out of and in the course of employment," *N.J.S.A.* 34:15–7. Payment under the Act is keyed to weekly salary. *N.J.S.A.* 34:15–12. *Insofar as temporary disability compensation is concerned, such compensation payments are in lieu of those wages. However, the amount of the award for permanent disability is not based on loss of earning power,* Everhart v. Newark Cleaning & Dyeing Co., 119 *N.J.L.* 108, 111–12, 194 *A*. 294 (E. & A.1937), *even though the statutory schedule of payments is measured in terms of weekly compensation.* Rather, the award represents compensation for the employee's physical impairment. *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 111, 469 *A*.2d 22 (1984).

[Emphasis added.]

It is that very distinction between payments "in lieu of" wages and "compensation for ... physical impairment" that informs our interpretation of § 25.1, and that requires the result we reach.

On the eve of oral argument in this case, PERS published notice of a proposed new rule, now codified as *N.J.A.C.* 17:1–4.39, purporting to clarify "when continued pension contributions are required of employers with employees who are receiving periodic awards of permanent disability benefits without pay." 31 *N.J.R.* 265 (February 1, 1999).[2] The new rule provides:

---

[2] Effective April 5, 1999, the rule applies not only to members of PERS governed by *N.J.S.A.* 43:15A–25.1, but also to members of the Teachers' Pension and Annuity Fund governed by *N.J.S.A.* 18A:66–32.1, members of the Police and

(a) An employer is responsible for the payment of an employee's pension contributions while the employee is receiving periodic temporary disability benefits through workers' compensation in lieu of pay.

(b) An employer is responsible for the payment of an employee's pension contributions while the employee is receiving a periodic award of permanent disability benefits through workers' compensation without pay if:

(1) The employee is unable to perform the job functions of the former position;

(2) The employee is either forced to resign, or is terminated due to the employee's inability to perform the job functions of the former position; and

(3) The employee does not have sufficient credited service to be eligible to receive an ordinary disability retirement allowance.

(c) An employer is not responsible for the payment of an employee's pension contributions while the employee is receiving a periodic award of permanent disability benefits through workers' compensation without pay if;

1. The employee has sufficient credited service to be eligible to receive an ordinary disability retirement allowance;

2. The employee voluntarily resigns from the employment; or

3. The employee is terminated by the employer for reasons unrelated to a workers' compensation award.

(d) If an employer ceases payment of employee pension contributions due to the reasons listed in (c)2 or 3 above, the employer shall notify the Division of Pensions and Benefits in writing of the reasons for the cessation of payments.

[31 *N.J.R.* 266.]

If the new rule had been adopted and applied to James, whose termination was upheld by the Merit System Board on the basis of her unauthorized absence from her job in violation of *N.J.A.C.* 4A:2–6.2, contributions for James would have been required while she was "receiving [a] periodic award[ ] of permanent disability benefits [through workers' compensation] without pay" only if she (1) had been unable to perform her job and was terminated because of that inability, and (2) did not have sufficient credited service to be eligible for ordinary disability retirement. The pension contributions she claims Woodbridge should have paid would not have been required, because James had "sufficient credited service to be eligible [for] ordinary disability retirement."

Firemen's Retirement System under *N.J.S.A.* 43:16A–15.2, and members of the State Police Retirement Systems under *N.J.S.A.* 53:5A–38.1.

We recognize that the proposed rule was not in effect during the period covered by James' permanent workers' compensation award, and that the rule may even have been proposed as a result of her pending appeal. Nevertheless, although not literally controlling, the proposed new rule reflects an expression of the Division of Pensions and Benefits' current interpretation of § 25.1, as well as its policy to be applied across the board to employee pensions, and not just to PERS. We also note that while an agency's interpretation of a governing statute is entitled to some (though not controlling) weight, the weight to be given in this instance is somewhat reduced in light of *Szczepanik v. Department of Treasury, supra,* 232 *N.J.Super.* 491, 557 *A.*2d 705, which appears to call for a different interpretation.

Petitioner relies upon *Szczepanik* in support of her contention that her employer should have been required to make pension contributions on her behalf for the period for which she received workers' compensation benefits for permanent partial disability. In *Szczepanik,* the order to make contributions enabled the worker to reach the ten years of service credit required to qualify for an ordinary disability pension.[3] This court noted in that case that

> the Division [of Pensions] wrote to [the employer] requiring that it pay pension contributions on behalf of Szczepanik for the period during which she received *temporary* disability benefits under Workers' Compensation [but] also advised the [employer] that it could voluntarily make contributions on petitioner's behalf, at its option, for the period during which she received *permanent* disability compensation benefits. Interestingly the brief submitted on behalf of PERS now says that this advice was incorrect and that only an award of permanent total disability, as distinct from an award of permanent partial disability, will relieve an employer of its obligation under *N.J.S.A.* 43:15A–25.1 to make contributions to PERS for an employee who received a Workers' Compensation award.
>
> [232 *N.J.Super.* at 497, 557 *A.*2d 705 (footnote omitted) (emphasis added).]

At the time we decided *Szczepanik,* PERS had apparently changed its position, interpreting *N.J.S.A.* 43:15A–25.1 variously, either (1) to require pension contributions for workers receiving

---

[3] Although not in the record before us, at oral argument counsel for the Board confirmed that James will be eligible to receive ordinary retirement (service and age) benefits.

permanent partial workers' compensation benefits and to excuse contributions only for permanent total disability award or upon resignation or valid termination; or (2) to give the public employer the option of continuing contributions for the permanent partial workers' compensation award period. The employer then declined to make contributions on the ground of Szczepanik's retirement.

Although *Szczepanik* appears to interpret *N.J.S.A.* 43:15A–25.1a to require pension contributions for periods upon which any workers' compensation disability permanent award is calculated, that interpretation must be understood in the context of PERS's own changeable interpretations and applications of the statute, including an impermissible interpretation that the pension contribution for permanent partial injury was optional.

In *Szczepanik*, the Board had relied in part on the employee's resignation to cut off her service short of the required ten years. We cited the forced nature of that resignation, under threat of an involuntary termination "not in good standing," if the employee did not submit her resignation. 232 *N.J.Super.* at 496, 557 *A.*2d 705.

■ Petitioner relies upon *Steinmann, supra,* 116 *N.J.* 564, 562 *A.*2d 791, for her claim to equitable tolling. *Steinmann* does not afford any support for petitioner's claim. The thrust of the Supreme Court's decision in *Steinmann* is that the public employee is entitled to fair treatment by the Board, which includes the Board's duty to properly and accurately inform a retiree of the options available pursuant to pension law, and the means of calculating the net benefits receivable under each option. In Steinmann's case, while the Board was aware of her pending workers' compensation petition, it did not accurately inform her that any workers' compensation benefits she might receive would be deducted from her ordinary disability pension benefits, but not from an early retirement service benefit. As a result of the Board's failure to meet its duty, Steinmann was held to have shown the required "good cause," *id.* at 573, 562 *A.*2d 791, and the Supreme Court permitted her to change her retirement election

after she had been receiving benefits, when such a change otherwise would have been untimely.

*Steinmann* also reiterates the long-standing view of the Court that pension benefits reflect deferred, earned compensation, not public largesse; that pension statutes should be construed liberally in favor of the employee; and that such benefits should not readily be forfeited. *Id.* at 572–73, 562 *A.*2d 791. The Court stressed the employee's right, stemming from statutory retirement options, to "make an informed choice about her retirement options [which she could not do] until she knew the amount of her workers' compensation award and until the Board's actuary calculated the amount of the offset. . . ." *Id.* at 575, 562 *A.*2d 791. None of the equitable considerations that drove the decision in *Steinmann* apply to James' claim.

Neither the equitable grounds cited in *Steinmann*, nor the various extraordinary circumstances in *Szczepanik* are presented here, and we find nothing to warrant adopting James' argument for equitable tolling of the two-year time period provided by *N.J.S.A.* 43:15A–7e for discontinuing membership in the retirement system. James knew that she was terminated from her job as of December 1994. Although her appeal from that termination was not decided until August 1996, she had no grounds for delaying her disability application. Likewise, although her workers' compensation claim was not finally resolved until May 1997, James has not shown how any uncertainty about that award prevented her from making a timely decision to seek accidental disability retirement.

There is an even more significant factor here that distinguishes this case from *Szczepanik.* James was terminated from her employment for disciplinary reasons, and not because of her disability. The last pension contribution directly attributable to her payroll status covered the period ending December 31, 1994. Under *N.J.S.A.* 43:15A–7e, she remained a member of PERS for two additional years, until December 31, 1996, and could have filed an application for accidental disability or ordinary disability retire-

ment at any time up until that date. We conclude that § 25.1 does not require any continued pension contributions after an employee has been properly terminated, solely because that employee obtains a workers' compensation award for pre-termination injuries. Our research has not revealed any case squarely addressing that issue.

As a matter of logic as well as public policy, we are satisfied that the Legislature did not intend that a public employer should be burdened by continuing pension contributions on account of an employee who is terminated for reasons unrelated to the compensable work-related injury. Nor do we find any reason to conclude that the legislature intended the two-year extension of membership in PERS to be further extended for an employee whose employment was so terminated.

We affirm.