**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1522-22

DULCE VIEIRA,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES' 
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Submitted April 8, 2024 – Decided April 30, 2024

Before Judges Marczyk and Chase.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx7581.

Goldman Davis Krumholz & Dillon PC, attorneys for appellant (Kristen Welsh Ragon, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Porter Ross Strickler, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Dulce Vieira appeals from the December 8, 2022 final administrative determination by the Board of Trustees ("Board") of the Public Employees' Retirement System ("PERS") denying her petition to remain in her PERS Tier 1 membership account. We affirm.

I.

On July 1, 2004, petitioner was enrolled in PERS when she was hired as a library assistant for Boonton Township. On February 1, 2016, she started working as a library assistant for Roxbury Township, at which time her PERS membership transferred to Roxbury. On July 6, 2019, petitioner resigned from her position at Roxbury.

In October 2018, prior to resigning from Roxbury, petitioner had applied for a position with the Department of Environmental Protection ("DEP"). She was initially scheduled for an interview on March 16, 2020. However, because of the COVID-19 pandemic, the interview was canceled and not rescheduled until May 2021. She was ultimately hired by the DEP and commenced working at her new position on September 25, 2021. Petitioner was subsequently

2

enrolled in a new PERS Tier 5 membership account.[1] The Assistant Director for the Division of Human Resources at the DEP contacted the Division of Pensions and Benefits ("Division") explaining that petitioner had been scheduled for an interview in March 2020, but due to the COVID-19 pandemic, the DEP did not resume hiring until 2021. As a result, her employment was delayed for fourteen months. The Assistant Director further indicated that had petitioner been interviewed as originally intended, she would have been hired no later than May 2020, within the two-year window of her last pension contribution, thereby reactivating her Tier 1 PERS account.

In May 2022, the Division advised petitioner that her Tier 1 membership had expired on June 30, 2021, pursuant to N.J.S.A. 43:15A-7(e).[2] She was further advised she was vested in her Tier 1 PERS account and was "entitled to a pension retirement, but cannot continue [her] membership in that account."

---

[1] Tier 5 memberships, which are financially less advantageous than Tier I memberships, apply to state employees enrolled after June 28, 2011. N.J.S.A. 43:15A-7.

[2] Petitioner's last pension contribution to her PERS account was on June 30, 2019. Because she did not hold PERS-covered employment for two years following her resignation from Roxbury, her PERS account expired on June 30, 2021.

Petitioner was further advised a new PERS account had been established in response to the application submitted by the DEP.

Petitioner appealed the Division's determination to the Board. She argued that if the DEP had conducted its original interview in March 2020, she would have been hired and resumed her PERS-covered employment prior to the June 30, 2021 expiration of her PERS Tier 1 account. Petitioner further argued she had a conditional offer of employment within the two-year period, even though she did not commence employment with the DEP until September 2021. The Board denied her request, and she appealed the Board's determination.

On December 8, 2022, the Board issued its final administrative determination. The Board held petitioner's inactive membership in PERS expired on June 30, 2021, pursuant to N.J.S.A. 43:15A-7(e). The Board further noted that although petitioner received an offer of employment within two years of her last pension contribution, she did not return to service until September 25, 2021—beyond the two-year limitation period set forth at N.J.S.A. 43:15A-7(e). Accordingly, the Board denied her request to extend the expiration of her original PERS account beyond the two-year limitation period under N.J.S.A. 43:15A-7(e).

4

The Board further noted, pursuant to N.J.S.A. 43:15A-8, that petitioner was not entitled to keep her Tier 1 PERS membership open for a period of ten years because she voluntarily resigned from her position at Roxbury, and she was not "discontinued" as contemplated by a plain reading of the statute. The Board noted, under Cologna v. Board of Trustees, Police & Firemen's Retirement System, that "discontinued from service" means "discontinued by the employer," and that N.J.S.A. 43:15A-8(a) is limited to a situation where an employee has been involuntarily terminated from service due to a layoff or workforce reduction initiated by the employer. 430 N.J. Super. 362, 372 (App. Div. 2013). This appeal followed.

II.

Petitioner contends the Board "strictly interpreted" N.J.S.A. 43:15A-7(e) and in doing so failed to employ the principles of equity which would have permitted her to maintain her Tier 1 status. She argues that after she resigned from Roxbury, she diligently pursued reemployment in the public sector. However, her efforts were impacted by the COVID-19 pandemic, which caused a delay in attaining her current position. She maintains the Board erred in failing to toll the two-year membership period under N.J.S.A. 43:15A-7(e). She asserts that pension statutes should be construed liberally in favor of an employee.

5

James v. Bd. of Trs., 323 N.J. Super. 100, 109-10 (App. Div. 1999), rev'd on other grounds, 164 N.J. 396 (2000) (citing Steinman v. Dep't of Treasury, 116 N.J. 564, 572-73 (1989)).

Petitioner argues the Board failed to consider the impact of COVID-19 on her ability to meet the two-year statutory timeframe. She concedes that no executive order "expressly authorized a broad expansion of statutory PERS membership criteria" because of the COVID-19 pandemic, but she references various executive orders issued by the Governor and omnibus orders issued by our Supreme Court, asserting we should toll the time period in N.J.S.A. 43:15A-7(e). She argues there were "practical impossibilities" which prevented her from being reemployed during the two-year period set forth in the statute.

Alternatively, petitioner argues she was eligible, under N.J.S.A. 43:15A-8, to obtain new employment within ten years after leaving Roxbury because she left through no fault of her own. She contends she was essentially "constructively discharged" because the circumstances at her work had changed. Specifically, her hours had been reduced from thirty-five hours per week as a full-time employee to twenty hours per week, and she also lost her medical benefits. Petitioner relies on Mancini v. Township of Teaneck for the proposition

that a withdrawal of benefits formerly provided to an employee may constitute an adverse employment action. 349 N.J. Super. 527, 564-65 (App. Div. 2002).

Our role in reviewing the decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility and defer to its fact-finding. City of Newark v. Nat. Res. Council in Dep't of Env't Prot., 82 N.J. 530, 539 (1980); Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 551 (2008). We will not upset the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Lavezzi v. State, 219 N.J. 163, 171 (2014); Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963).

On questions of law, our review is de novo. In re N.J. Dep't of Env't Prot. Conditional Highlands Applicability Determination, Program Int. No. 435434, 433 N.J. Super. 223, 235 (App. Div. 2013) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

7

In determining whether agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

"The party challenging the agency action has the burden to show that the administrative determination is arbitrary, capricious or unreasonable." In re Renewal TEAM Acad. Charter Sch., 247 N.J. 46, 73-74 (2021) (citing In re Att'y Gen. L. Enf't Nos. 2020-5 and 2020-6, 246 N.J. 462 (2021)).

It is a long-standing proposition that pension statutes "should be liberally construed and administered in favor of the persons intended to be benefited thereby." Geller v. Dep't of Treasury, 53 N.J. 591, 597-98 (1969). However, this liberality is to be applied when the employee is eligible for benefits, "but eligibility is not to be liberally permitted." Smith v. Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). Rather, in determining eligibility, "applicable guidelines must be carefully interpreted so

8

as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Ibid. (alteration in original) (quoting Chaleff v. Tchrs.' Pension & Annuity Fund Trs., 188 N.J. Super. 194, 197 (App. Div. 1983)).

PERS is governed by N.J.S.A. 43:15A-1 to -161. N.J.S.A. 43:15A-7(e) provides: "Membership of any person in the [PERS] retirement system shall cease if [they] shall discontinue [their] service for more than two consecutive years." Petitioner does not dispute she discontinued her service for more than two consecutive years after she made her last pension contribution to her Tier 1 PERS account on June 30, 2019. She did not commence her new position with the DEP until September 25, 2021—beyond the time period in N.J.S.A. 43:15A-7(e). We conclude there is no basis to expand the timeframe set forth in N.J.S.A. 43:15A-7(e), notwithstanding the COVID-19 pandemic. Petitioner has not cited to any controlling authority where equitable principles have been applied in an analogous situation. The Legislature could have enacted exceptions to the statute to address issues arising under N.J.S.A. 43:15A-7(e) as a result of the COVID-19 pandemic. However, it did not do so. In the absence of such statutory amendments, we are constrained to affirm the Board's decision.

Petitioner also relies on N.J.S.A. 43:15A-8(a) which provides:

> If a member of the retirement system has been discontinued from service without personal fault or through leave of absence granted by an employer or permitted by any law of this State and has not withdrawn the accumulated member's contributions from the retirement system, the membership of that member may continue, notwithstanding any provisions of this act if the member returns to service within a period of [ten] years from the date of discontinuance from service.

N.J.S.A. 43:15A-8(a) is a "discrete and limited exception," Del Pomo v. Board of Trustees, Public Employees' Retirement System, 252 N.J. Super. 430, 433 (App. Div. 1991), to the general rule that should be "narrowly construed," Petition of Singer Asset Finance Co., 314 N.J. Super. 116, 121 (App. Div. 1998).

While petitioner was dissatisfied with her reduction in hours, she was not involuntarily terminated from service due to a layoff or workforce reduction initiated by her employer. In Lally v. Public Employees' Retirement System, the PERS Board interpreted N.J.S.A. 43:15A-8(a) as being confined to circumstances where an employee is on an approved leave of absence or their employer "terminates through no fault of [their] own (layoff, abolishment of position)." 246 N.J. Super. 270, 272 (App. Div. 1991). We affirmed, holding that because Lally left her employment when her political term expired, she was not "not laid off, nor was her position abolished." Ibid. Petitioner here was also

10

not laid off and her position was not abolished. Accordingly, she is not entitled to the protections of N.J.S.A. 43:15A-8(a).

Petitioner does not contest that she voluntarily resigned from her employment with Roxbury, and there is no suggestion Roxbury sought to terminate her employment. At best, she claims she was "constructively discharged" because of the reduction in her hours, which she characterizes as an "adverse employment action," relying on Mancini. 349 N.J. Super. at 565. Petitioner's reliance on Mancini is misplaced. The facts and allegations in that matter bear no resemblance to this case. Mancini involved a sexual harassment and retaliation action under the Law Against Discrimination. Id. at 534. Here, there is no suggestion petitioner's reduction in hours at Roxbury was at all influenced by any improper motives. Rather, she simply alleges the reduction in hours was some type of adverse employment action resulting in her constructive discharge. We are unconvinced. As noted, petitioner was not "discontinued from service" or terminated by a layoff or abolishment of her position. Accordingly, the Board did not err in finding she voluntarily resigned and was not entitled to extend her Tier 1 PERS membership.

We are also unconvinced by petitioner's equity-related arguments. "Here, as in all cases, equity follows the law." Berg v. Christie, 225 N.J. 245, 280

11

(2016). A pension member cannot obtain an equitable remedy unavailable under applicable statutory law. Ibid. "When positive statutory law exists, an equity court cannot supersede or abrogate it." In re Quinlan, 137 N.J. Super. 227, 261 (Ch. Div. 1975), modified and remanded on other grounds, 70 N.J. 10 (1976). Petitioner cannot invoke an equitable doctrine to override an unambiguous statute. Berg, 225 N.J. at 280. Despite the DEP's delays in conducting her interview, we are bound by the clear language of N.J.S.A. 43:15A-7(e). Petitioner was not hired within the statutorily prescribed timeframe and, therefore, was unable to continue her membership as a Tier I PERS member.

The Board's decision is supported by sufficient credible evidence in the record as a whole. R. 2:11-3(e)(1)(D). To the extent we have not addressed any of petitioner's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12