COUNTY OF MERCER, PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DEFENDANTS-RESPONDENTS, v. DORIS SHESHELSKY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 22, 1984—Decided March 9, 1984.

Before Judges BOTTER, PRESSLER and O'BRIEN.

*Paul D. Koenig,* Mercer County Counsel, for appellant (*Paul D. McLemore,* Assistant County Counsel, on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, for respondent, Board of Trustees, Public Employees' Retirement System (*Deborah T. Poritz,* Deputy Attorney General, of counsel; *Ellis I. Medoway,* Deputy Attorney General, on the brief).

No brief was filed by respondent Sheshelsky.

The opinion of the court was delivered by

PRESSLER, J.A.D.

This controversy, which arises under *N.J.S.A.* 43:15A–1, et *seq.* (Public Employees' Retirement System (PERS)), raises the question of whether a member of the system under the age of sixty who is receiving periodic workers' compensation benefits is subject to involuntary retirement on ordinary disability on the application of the employer. We hold that in these circumstances the employer may initiate an ordinary disability retirement pursuant to *N.J.S.A.* 43:15A–42 notwithstanding the subsequently enacted provisions of *N.J.S.A.* 43:15A–25.1.

Respondent Doris Sheshelsky was employed by Mercer County (County) in 1967 and was enrolled as a PERS member in 1968. In December 1977 she was found by the Division of Workers' Compensation to be permanently and totally disabled as a result of the combined effects of her previous disabilities and her last compensable accident. She was, therefore, also awarded Second Injury Fund benefits. Since that time she has been in receipt of periodic workers' compensation payments and has not returned to work.

In December 1981, when respondent was 57 years old, the County submitted an application for her involuntary retirement on ordinary disability pursuant to *N.J.S.A.* 43:15A–42. On receipt of the application, PERS made inquiry of the respondent to determine the status of her compensation payments and whether she intended to initiate retirement on ordinary disability. Based on the fact that the payments were continuing and she did not intend to apply for retirement, PERS denied the County's application. The County thereupon filed a request for a formal hearing, and the matter was heard on stipulations, joint exhibits and briefs by an administrative law judge. Despite notice to her, respondent did not elect to participate in that hearing. In his initial decision, the administrative law judge

concluded that the provisions of *N.J.S.A.* 43:15A–25.1 did not constitute a bar to the County's option afforded by *N.J.S.A.* 43:15A–42 and therefore recommended that PERS consider the County's application on its merits. PERS, however, disagreed, concluding that pursuant to *N.J.S.A.* 43:15A–25.1 only the employee has the option to file an application for an ordinary disability retirement. It therefore rejected the County's application. We are therefore required to construe these two provisions of the statute to determine whether *N.J.S.A.* 43:15A–42 was modified by the later enactment and amendment of *N.J. S.A.* 43:15A–25.1.

*N.J.S.A.* 43:15A–42 provides that a member under 60 years of age who has 10 years or more of credit for New Jersey service shall be retired for ordinary disability if "physically or mentally incapacitated for the performance of duty" on his own application, on the application of the head of the department in which he is employed, or on the application of one acting in his behalf. That provision of the statute has been substantially unchanged since its enactment as part of the original pension act.

*N.J.S.A.* 43:15A–25.1 was first enacted in 1966 by *L.*1966, *c.* 217, § 28. It then provided in full as follows:

a. If any member of the retirement system receives periodic benefits payable under the Workmen's Compensation Law during the course of his active service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer. Such payments shall be computed at the full rate of contribution on the base salary subject to the retirement system, just prior to the receipt of the workmen's compensation benefits. The moneys paid by the employer shall be credited to the member's account in the annuity savings fund and shall be treated as employee contributions for all purposes. The employer will terminate the payment of these moneys when the periodic benefits payable under the Workmen's Compensation Law are terminated.

The member for whom the employer is making such payments, will be considered as if he were in the active service and shall be permitted to continue to make contributions to purchase the additional death benefit coverage provided by section 57 of the act to which this section is a supplement.

b. No application for retirement benefits may be approved by the board of trustees while the member, applying for such benefits, is in receipt of periodic benefits under the Workmen's Compensation Law.

In 1971 paragraph (b) of this provision was amended. The import of the amendment was to permit a member to apply for

retirement benefits while in receipt of periodic workers' compensation benefits provided, however, that the remaining compensation benefits be offset against the pension benefits. Corollary changes were made in paragraph (a) as well to reflect the exercise of the member's option to retire. Paragraph (b) of the statute, as a result of the 1971 amendment, now reads as follows:

> b. An application for retirement benefits may be approved by the board of trustees while the member, applying for such benefits, is in receipt of periodic benefits under the Workmen's Compensation Law. In this event the actuarial equivalent of such periodic benefits remaining to be paid shall be computed and will serve to reduce the pension portion of the retirement allowance payable to the retirant, subject to the provisions of section 64 of chapter 84 of the laws of 1954.

The position of PERS, expressed in its final determination, was that since the 1971 amendment of *N.J.S.A.* 43:15A–25.1 expressly refers only to the employee's option to retire and alludes only to an application submitted by an employee, the Legislature must have intended to modify *N.J.S.A.* 43:15A–42 by withholding from the employer the right to involuntarily retire a disabled member who is in receipt of periodic workers' compensation benefits. We reject this contention. Our review of the history of *N.J.S.A.* 43:15A–25.1 persuades us that this interpretation does not comport with legislative intent.

We are aware that the interpretation of a statute by the agency entrusted with the responsibility for its enforcement is entitled to weight. See, *e.g., Medcor, Inc. v. Finley,* 179 *N.J.Super.* 142, 145 (App.Div.1981); *Marsh v. Finley,* 160 *N.J.Super.* 193, 200 (App.Div.1978), certif. den. 78 *N.J.* 396 (1978). We are also aware that pension acts are required to be construed most favorably to the employee's interests. *In Re Application of Howard Smith,* 57 *N.J.* 368, 380 (1971). Nevertheless, neither of these principles permits us to ignore the legislative intent "which plainly emerges from the total statutory treatment of the subject." *Ibid.* We are persuaded that the legislative intent here is so clear as to compel our disagreement with PERS's interpretation.

At the outset, it is evident, as a matter of legislative history, that prior to the 1966 adoption of *N.J.S.A.* 43:15A–25.1 there was confusion and inconsistency of approach respecting the relationship between disability retirement benefits and workers' compensation benefits. See, reviewing that history, *In Re Application of Howard Smith,* 57 *N.J.* 368, 374–379 (1971). It was clear prior to the 1966 enactment that *N.J.S.A.* 34:15–43 barred a public employee already in receipt of a disability pension from thereafter obtaining workers' compensation for the same injury. It was also clear that an employee could not obtain the benefit of both a disability pension and periodic workers' compensation benefits. The problem which had developed involved the situation in which a public employee who had been awarded workers' compensation benefits thereafter sought to retire on disability while the compensation benefits were still being paid. Because of the double-benefit bar, questions arose as to which benefit should be offset against the other and who would be the ultimate beneficiary of offsets. See *In Re Application of Howard Smith, supra.* These uncertainties were resolved by the Legislature in 1966 when it determined that so long as a public employee was in receipt of periodic compensation benefits, the employee could not apply for disability retirement. It not only then enacted *N.J.S.A.* 43:15A–25.1, which so provided in respect of PERS but also *N.J.S.A.* 18A:66–32.1, an identical provision applicable to the Teachers' Pension and Annuity Fund, *N.J.S.A.* 18A:66–1, *et seq.* In the following year it enacted *N.J.S.A.* 43:16A–15.2, an identical provision applicable to the Police and Firemen's Retirement System, *N.J.S.A.* 43:16A–1.

During the ensuing years, it became evident that the interests of public employees were substantially prejudiced by their inability to retire on disability until exhaustion of their compensation benefits since, in many cases, the disability retirement benefit would have exceeded the compensation benefit. Accordingly, in 1971, all three pension acts were amended to permit the employee to make an election between the two at any time prior to the exhaustion of the compensation benefits. Those amend-

ments also made clear that the public pension fund would be the beneficiary of any offset necessary to avoid payment to the employee of double benefits. Thus, as the Supreme Court noted in *Conklin v. City of East Orange,* 73 *N.J.* 198, 204 (1977), the net effect of the 1971 amendments was to permit the public employee "to receive the more advantageous of the benefits payable under the respective statutory provisions."

The double-benefit bar, which finally resulted in the 1971 amendments, applies, however, only to the simultaneous receipt of compensation benefits and disability benefits. It was never applied to bar a public employee retired on age and service from receiving both pension and compensation benefits. See *Pisapia v. Newark,* 47 *N.J.Super.* 353 (Cty Ct.1957), cited with approval in *In Re Application of Howard Smith, supra,* 57 *N.J.* at 374. And see *Starkey v. Treasury Dept., Pensions,* 183 *N.J.Super.* 1 (App.Div.1982), certif. den. 91 *N.J.* 190 (1982). It is this principle, statutorily confirmed by the 1977 amendment of *N.J.S.A.* 34:15–29, which is at the nub of the controversy here. As we have noted, respondent Sheshelsky was 57 years old when Mercer County initiated its involuntary retirement application pursuant to *N.J.S.A.* 43:15A–42. Her decision not to retire on disability was not based on her evaluation of the respective benefits of the workers' compensation benefits and the disability retirement benefits then available to her. It was based rather on her desire to forestall her retirement until she had reached the age of sixty when she would be eligible for age and service retirement and could consequently receive both that larger pension and, without offset, the balance of the workers' compensation payments. The question is whether that option is available to her under the controlling statutory complex. We conclude that it is not.

That provision of *N.J.S.A.* 43:15A–42 which permits the public employer to initiate the disability retirement of a permanently and totally disabled employee prior to his eligibility for age and service retirement has apparently been subject to little judicial comment. That is also the case with the cognate provision of

other pension fund acts. The one reference to the purpose of these provisions was made in *Flynn v. Union City,* 32 *N.J.Super.* 518, 523 (App.Div.1954), certif. den. 17 *N.J.* 253 (1955), in which the employee-plaintiff had argued that the double-benefit bar prohibiting simultaneous receipt of disability retirement and workers' compensation benefits did not apply where the disability retirement was involuntary. In rejecting this argument, we explained that "if the municipality was forced to await the voluntary action of a disabled employee to apply for disability, it might well be subjected to the necessity of retaining unfit employees on its rolls without reason." We therefore concluded that for purposes of the double-benefit bar, it was immaterial whether the disability retirement was initiated by the employer or the employee.

We are persuaded that our brief explanation in *Flynn* of the purpose of the involuntary disability retirement provision is self-evident. A public employer must be permitted to employ a full complement of employees who are physically able to perform their duties. The continued employment of a permanently and totally disabled worker is patently contrary to the public interest. The conflict between the public interest and the interest of the disabled employee is accommodated by the statutory provision according him a disability pension. It was never, however, the legislative intention to enlarge the scope of that accommodation by permitting a permanently and totally disabled employee to remain employed, at his option, until he exhausts workers' compensation benefits or qualifies for age and service retirement. We are persuaded that the amendment of *N.J.S.A.* 43:15A–25.1 does not express any contrary intention.

The sole purpose of the 1971 amendment of *N.J.S.A.* 43:15A–25.1 and its cognate provisions in the other pension acts was to resolve the disability retirement/workers' compensation problem. That resolution, as explained by *Conklin v. City of East Orange, supra,* was to permit the employee to apply for both benefits, in either chronological order, to the end that he is able to obtain the more advantageous of the two without being

bound by the recourse first elected. Thus, a disability retirement no longer precludes a subsequent opportunity to obtain a more advantageous compensation award, and obtaining a compensation award does not preclude the subsequent opportunity to obtain a more advantageous disability pension. That being so, we do not perceive how an involuntary disability retirement would prejudice any of the employee rights accorded by *N.J.S.A.* 43:15A–25.1 since it is immaterial, both to the purpose and the function of that statute, whether the disability retirement is voluntary or involuntary. We therefore conclude that the textual focus on the employee's option relates only to the disability retirement/workers' compensation problem by making clear that the employee need not make a binding election. Those textual references never purported to address the voluntary/involuntary alternatives provided for by *N.J.S.A.* 43:15A–42 and never intended in any way to affect the continued viability of the public employer's option to initiate an involuntary disability retirement. We therefore hold that *N.J.S.A.* 43:15A–25.1 does not constitute an implied repeal of part of *N.J.S.A.* 43:15A–42.

The determination appealed from is reversed, and we remand to the Public Employees' Retirement System consistent with the proceedings herewith.