753 A.2d 1061

ANNIE JAMES, PETITIONER–APPELLANT, v. BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIRE-MENT SYSTEM, RESPONDENT–RESPONDENT.

Argued February 15, 2000—Decided June 20, 2000.

*Samuel J. Halpern,* argued the cause for appellant.

*David Dembe,* Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.,* Attorney General of New Jer-

sey, attorney; *Mary C. Jacobson*, of counsel, *Sherrie L. Gibble*, on the brief).

The opinion of the Court was delivered by

LaVECCHIA, J.

On February 21, 1997, petitioner, Annie James, filed for accidental disability retirement under the Public Employees' Retirement System (PERS). The Board of Trustees of the Public Employees Retirement System (PERS Board) rejected her application, finding it to be untimely. In so concluding, the PERS Board rejected petitioner's contention that her employer had a statutory obligation to make pension payments on her behalf during that period of time when she was entitled to receive permanent partial disability benefits under the New Jersey Workers' Compensation Act for a work related injury. The PERS Board conceded that *N.J.S.A.* 43:15A–25.1 requires an employer to make contributions on behalf of an employee who is awarded temporary disability benefits, but found no equivalent employer obligation in the case of permanent partial disability benefits, because it did not view those payments as payments made "in lieu of [her] normal compensation."

The Appellate Division affirmed the PERS Board. *James v. Board of Trustees, PERS*, 323 *N.J.Super.* 100, 732 *A.*2d 517 (App.Div.). We granted certification, 162 *N.J.* 133, 741 *A.*2d 100 (1999), and now reverse. We hold that *N.J.S.A.* 43:15A–25.1 obligates an employer to make pension contributions on behalf of an employee who is awarded either temporary or permanent disability benefits. We also accept the principle that an employer's obligation to make contributions pursuant to *N.J.S.A.* 43:15A–25.1 ordinarily will terminate when an employee is validly terminated or if the employee is physically or mentally incapacitated for the performance of duty, meets the requirements for ordinary disability or accidental disability retirement, and is involuntarily retired by his or her employer pursuant to *N.J.S.A.* 43:15A–42 or –43.

■ We decline, however, to apply that principle in the unique circumstances of this case. The fact that petitioner was discharged for unauthorized absence from work shall not operate to excuse continuation of employer pension contributions on her behalf for the duration of her permanent partial disability award. Respondent should therefore direct petitioner's employer to make pension contributions for that period and petitioner's application for accidental disability retirement benefits should be accepted as timely filed.

I.

The facts are not in dispute. Petitioner was injured on May 4, 1994 in the course of performing her job at the Woodbridge Developmental Center. She was paid sick leave injury (SLI) benefits through June 30, 1994, when she was cleared by her physicians to return to work.[1] From June 30 through July 13, 1994, she took unauthorized sick leave.

After reporting for work on July 14, 1994, she was granted an unpaid leave of absence. On August 24, 1994, while on unpaid leave, petitioner filed a workers' compensation claim. Following successive renewals by her employer, petitioner's unpaid leave of absence expired on November 30, 1994. When she did not return to work for five days after November 30, provide justification for her absence, or respond to a letter informing her of proposed disciplinary proceedings, her employer brought a disciplinary action to remove her from her position. Her employment was terminated on December 8, 1994.

The termination was affirmed by the Merit System Board on August 6, 1996 and no further appeal was taken. No employer

---

[1] Petitioner appealed the initial denial of certain SLI benefits and succeeded in having three additional days of SLI awarded for the period prior to June 30, 1994. She was unsuccessful in seeking an award of any SLI days after June 30, 1994, the date on which three of her treating physicians determined she was capable of resuming full duty.

contributions to the Public Employee Retirement System were made on her behalf after December 31, 1994, the last month during which she was in active service.

Petitioner's workers' compensation claim was not resolved until May 20, 1997, when a settlement was reached. The terms of the settlement awarded petitioner temporary disability benefits based on full salary for the period May 4, 1994, through June 30, 1994. Those benefits were offset against her sick leave benefits. Petitioner also was awarded permanent partial disability benefits pursuant to *N.J.S.A.* 34:15–12(c) based on a 10 percent disability for residuals of lumbosacral spine trauma with suggestions of radiculopathy. The permanent partial disability award of $7,380 was calculated on the basis of 60 weeks at $123 per week, representing the weeks between June 30, 1994 and August 23, 1995.

On February 21, 1997, shortly before her workers' compensation claim was resolved, petitioner filed an application for an accidental disability retirement pension. Pursuant to *N.J.S.A.* 43:15A–43, only members of PERS are permitted to file such applications. Because employer contributions to PERS on petitioner's behalf ceased in December 1994, following her termination from service,[2] petitioner's membership in PERS terminated two years later on December 31, 1996. See *N.J.S.A.* 43:15A–7(e). Accordingly, unless the provisions of *N.J.S.A.* 43:15A–25.1 are invoked to require employer pension contributions on her behalf for the period of her later determined workers' compensation award, petitioner's application would clearly be untimely. Petitioner, however, would be eligible to apply for accidental disability retirement were the employer obligated to make pension contributions on her behalf for the duration of her workers' compensation award, i.e., through August 23, 1995.

---

[2] It is unclear from our review of the ALJ's initial decision or the final decision of the Merit System Board whether either was aware of petitioner's pending workers' compensation claim, filed before her employer removed her from her position for failure to report to work for five consecutive days.

When petitioner filed her application for accidental disability retirement and her case reached the PERS Board, the Board directed an examination into whether petitioner was entitled to receive any additional pension contributions on her behalf from her employer. That review resulted in the PERS Board affirming the position originally taken by the Division of Pensions on petitioner's retirement application, namely that the application was untimely pursuant to *N.J.S.A.* 43:15A–7(e).

The Board held that *N.J.S.A.* 43:15A–25.1, which requires an employer to make pension contributions while an employee receives periodic benefits "in lieu of his normal compensation," does not require an employer to make pension contributions for any weeks factored into the calculation of a permanent partial disability benefits award. The Board held that it would credit the employee only with weeks for which temporary disability benefits were paid because it views such benefits as payments in lieu of normal compensation, but it does not consider payments for permanent partial disability as payments "in lieu of compensation." Rather, such payments are perceived by the Board to be compensation to the worker for the injury sustained.

As noted, the Appellate Division affirmed.

## II.

We start our analysis by focusing on the text of *N.J.S.A.* 43:15A–25.1. The statute provides as follows:

43:15A–25.1 Effect of receiving periodic workmen's compensation benefits

a. *If any member of the retirement system receives periodic benefits payable under the Workers' Compensation Law during the course of his active service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer.* Such payments shall be computed, in accordance with section 25 of P.L.1954, c. 84 (C. 43:15A–25), at the rate of contribution on the base salary subject to the retirement system, just prior to the receipt of the workers' compensation benefits. The moneys paid by the employer shall be credited to the member's account in the annuity savings fund and shall be treated as employee contributions for all purposes. *The employer will terminate the payment of these moneys when the periodic benefits payable under the Workers' Compensation Law are terminated or when the member retires.*

The member for whom the employer is making such payments, will be considered as if he were in the active service and shall be permitted to continue to make contributions to purchase the additional death benefit coverage provided by section 57 of P.L.1954, c. 84 (C. 43:15A–57).

b. An application for retirement benefits may be approved by the board of trustees while the member, applying for such benefits, is in receipt of periodic benefits under the Workers' Compensation Law. If a retirant receiving an accidental disability retirement allowance becomes a recipient of periodic benefits under the workers' compensation law after the date of retirement, the pension portion of the retirement allowance payable to the retirant shall be reduced, during the period of the payment of the periodic benefits, dollar-for-dollar in the amount of the periodic benefits received after the date of retirement, subject to the provisions of section 64 of P.L.1954, c. 84 (C. 43:15A–64). The reduction provided for herein shall not affect the retirant's pension adjustment benefits or survivor benefits that may be payable upon the death of the retirant.

If an accidental disability retirant receives a retirement allowance without reduction and periodic benefits under the workers' compensation law for any period of time after the date of retirement, the retirant shall repay to the retirement system the amount of the pension portion of the retirement allowance which should have been subject to reduction under this subsection. The repayment may be in the form of a lump sum payment or scheduled as deductions from the retirant's retirement allowance and pension adjustment benefits. If the retirant dies before full repayment of the amount required, the remaining balance shall be deducted from any death benefits payable on behalf of the retirant.

[*Ibid.* (emphasis added).]

The PERS Board found that the employer's obligation to make pension contributions on petitioner's behalf was not triggered by the award of permanent partial disability benefits because those benefits, in contradistinction to temporary disability benefits, were not viewed as payments "in lieu of [her] normal compensation." The PERS Board reasoned that the statute's reach was limited to payments that fit that description and the Appellate Division agreed. *N.J.S.A.* 43:15A–25.1 does indeed speak to periodic benefits payable under Workers' Compensation law to an employee member "in lieu of his normal compensation." However, in order to determine whether the Legislature intended that phrase to have the limiting effect urged by respondent, it is necessary to examine the language of the statute in the context of the statute's history.

Our goal in interpreting statutes is to discern and to give effect to the underlying legislative intent. *Wollen v. Borough of*

*Fort Lee*, 27 *N.J.* 408, 418, 142 *A.*2d 881 (1958). We note that over the years respondent has taken differing positions concerning the obligations imposed on employers pursuant to *N.J.S.A.* 43:15A–25.1, albeit that some of respondent's positions were taken in response to court actions. See *James, supra*, 323 *N.J.Super.* at 108–09, 732 *A.*2d 517. Be that as it may, we are not dealing with a longstanding and consistent agency interpretation of a statute to guide us in discerning legislative intent. In these circumstances we turn to available legislative history and prior precedent involving this statute in its evolving forms in seeking the legislative objective underlying *N.J.S.A.* 43:15A–25.1. *Bergen Commercial Bank v. Sisler*, 157 *N.J.* 188, 205, 723 *A.*2d 944 (1999)(citing *National Waste Recycling, Inc. v. Middlesex County Improvement Authority*, 150 *N.J.* 209, 224, 695 *A.*2d 1381 (1997)).

*N.J.S.A.* 43:15A–25.1, in its earliest iteration, was added to the PERS statutory scheme pursuant to the enactment of Section 28 of Chapter 217 of the Laws of 1966. It then provided in full as follows:

a. If any member of the retirement system receives periodic benefits payable under the Workmen's Compensation Law during the course of his active service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer. Such payments shall be computed at the full rate of contribution on the base salary subject to the retirement system, just prior to the receipt of the workmen's compensation benefits. The moneys paid by the employer shall be credited to the member's account in the annuity savings fund and shall be treated as employee contributions for all purposes. The employer will terminate the payment of these moneys when the periodic benefits payable under the Workmen's Compensation Law are terminated.

The member for whom the employer is making such payments, will be considered as if he were in the active service and shall be permitted to continue to make contributions to purchase the additional death benefit coverage provided by section 57 of the act to which this section is a supplement.

b. No application for retirement benefits may be approved by the board of trustees while the member, applying for such benefits, is in receipt of periodic benefits under the Workmen's Compensation Law.

The same provisions were added to the statutes establishing the Teachers' Pension and Annuity Fund (TPAF) and the Police and Firemen's Retirement System (PFRS) at about the same time. See *L.* 1966, *c.* 218, § 22 and *L.* 1967, *c.* 250, § 30, respectively.

All versions contained identical language in subsection a., stating that an employee receiving workers' compensation periodic benefits was to be considered "as if he were in active service" and the public employer was directed to continue to make its own required contribution to the pension fund for the employee, as well as the contribution of the injured employee, during the period covered by the compensation payments. The employer's entire contribution was to be based on the employee's salary at the time the compensation benefits began, and was to be credited to the employee's pension account and treated as his contribution. *Ibid.*

The significant difference between the original version of *N.J.S.A.* 43:15a–25.1 and the original parallel versions in the TPAF and PFRS statutes on the one hand, and the modern version on the other, is in the language of subsection b. The 1966 version provided that an employee injured in the line of duty could not obtain a disability pension for his or her injuries while the employee was receiving workers' compensation payments for the same disability. Thus, the statute would prevent double recovery of benefits by making an employee choose between pursuing a disability retirement or a workers' compensation award. If the latter was chosen, the employee was not to be precluded from later seeking a disability retirement after payment of the workers' compensation benefits terminated. The mandated employer's contributions would continue until the periodic workers' compensation benefits terminated and that would keep the employee in active status for pension purposes. With this 1966 enactment, the Legislature hoped to put to rest what rightly had been described as a confusing and inconsistent approach to the relationship between disability retirement benefits and workers' compensation benefits. *Mercer County v. State, Dept. of Treasury,* 193 *N.J.Super.* 229, 234, 473 *A.*2d 107 (App.Div.1984).

The history of the legislative activity leading up to the enactment of Chapter 217 of the Laws of 1966 and its parallel provisions in TPAF and PFRS was thoroughly reviewed by this Court in Justice Francis' opinion in *In re Application of Howard Smith,*

57 *N.J.* 368, 374–379, 273 *A.*2d 24 (1971). In *Smith,* we summarized the 1966 legislative enactment's purpose as follows:

In combination, the enactments involved here say that a former public employee who has retired on an accidental disability pension cannot be granted workmen's compensation benefits for the same disability, *and if the employee elects to receive workmen's compensation initially no subsequent pension for the total disability arising from the accident can be approved for him while he is receiving compensation.* In total effect they clearly reveal the lawmakers' intention not to allow a public employee to receive concurrent pension and compensation benefits for the same disability.

[*Id.* at 380, 273 *A.*2d 24 (emphasis added).]

In *Smith,* the Court gave effect to the legislative desire to bar double recovery of both pension and compensation benefits for an injury. The Court also accommodated the legislative policy that workers' compensation benefits, if sought, be paid in full without prejudicing the employee due to the length or nature of the payments. The Court, however, allowed the claimant to retain his disability pension award, notwithstanding that he was already receiving workers' compensation payments for a partial permanent disability at the time the Board of Trustees of PFRS awarded his disability pension. It did so because Smith had applied for the pension first, with the workers' compensation application following later, and because the pension benefits were greater. The Court effected a deduction of the workers' compensation benefits from the monthly disability pension benefits to fulfill the public policy against double recovery.

But the 1966 law had placed public employees in an untenable position, forcing work-disabled employees to choose whether to apply first for workers' compensation or a disability pension, without knowing which would provide greater benefits. Any employee who chose workers' compensation first would be forced to wait until the exhaustion of all workers' compensation benefits before he or she could apply for a disability pension, even if the disability pension would pay significantly more. *Conklin v. City of East Orange,* 73 *N.J.* 198, 203, 373 *A.*2d 996 (1977).

The Legislature's cure for that problem occurred in 1971 when it amended *N.J.S.A.* 43:15A–25.1 and its parallel versions in the

TPAF and PFRS statutes. *L.* 1971, *c.* 213, § 46. The amendment was the precursor to the current language of subsection b, which permits an employee to choose to pursue workers' compensation benefits or a disability pension at any time. An offset must occur if both are awarded simultaneously to avoid double recovery for the same disability, but the 1971 amendment to *N.J.S.A.* 43:15A–25.1 allows the employee the more advantageous of the respective benefits. *See Conklin, supra,* 73 *N.J.* at 202–205, 373 *A.*2d 996 (1977); *Mercer County, supra,* 193 *N.J.Super.* at 234–235, 473 *A.*2d 107.

The purpose behind the 1971 amendment was acknowledged and implemented by this Court in *Conklin, supra. Conklin,* like *Smith,* involved an injured employee who was determined to be eligible for partial permanent disability benefits under workers' compensation and for a disability retirement pension. In *Smith,* an accidental disability retirement pension was involved; in *Conklin,* it was an ordinary disability retirement pension. Importantly for the present inquiry, in giving effect to the legislative will underlying the 1971 amendment to *N.J.S.A.* 43:15A–25.1, this Court did not view the statute's operation as turning on whether the nature of the workers' compensation award was for temporary disability or permanent disability. *Conklin, supra,* 73 *N.J.* at 201, 373 *A.*2d 996.

The 1971 amendment continued the original 1966 mandate that an employer pay the required employer and employee pension contributions, but conditioned that requirement on either completion of the workers' compensation payments or retirement of the employee. Thus, the statute continued to enable an employee in receipt of workers' compensation periodic benefits to enjoy the receipt of those benefits, and simultaneously to have creditable service extended for pension purposes because of the employer's obligation to keep that employee in active status and maintain his or her pension contributions. There was no indication of legislative intent to condition the injured public employee's choice, namely whether to pursue first the workers' compensation bene-

fits or the disability pension, based on whether the workers' compensation award was for temporary or permanent disability benefits.

## III.

Throughout the evolution of *N.J.S.A.* 43:15A–25.1 and its related provisions, the Legislature has been seeking an accommodation between the interests of the disabled employee and the public interest. As expressed in the earliest cases considering *N.J.S.A.* 43:15A–25.1 and its companion versions in the related public retirement systems, the public interest, to be balanced against the disabled employee's interest, was the policy of avoiding double recovery of benefits for injuries caused by the same disability. *See Smith, supra,* 57 *N.J.* at 375, 273 *A.*2d 24.

The policy of avoiding double recovery of benefits is not implicated in this appeal. Petitioner's entitlement to mandated employer pension contributions during the period of her workers' compensation award would not result in double recovery, and respondent does not contend otherwise. It is not necessary, therefore, to favor respondent's position in order to achieve the legislative objective. The only question then is whether the language of the statute, with unmistakable clarity, mandates the result advocated by respondent. We find no such clarity of meaning in the statutory language.

Never in this Court's prior applications of *N.J.S.A.* 43:15A–25.1, or its cognate provisions, has the Court interpreted narrowly the employer's obligation to make employee and employer pension contributions, limiting such obligation on the employer's part to a specific type of workers' compensation benefit paid to the employee. In earlier cases involving applications of *N.J.S.A.* 43:15A–25.1, the Court did not distinguish between temporary and permanent disability benefits payable to an employee. *See Smith, supra,* 57 *N.J.* at 374–76, 273 *A.*2d 24; *Conklin, supra,* 73 *N.J.* at 202–04, 373 *A.*2d 996.

The statute's operative terms are engaged whenever the employee is receiving workers' compensation benefits, and is not receiving normal salary from his employer that would otherwise require ongoing pension contributions from the employer and from the employee in the form of salary deductions. See *N.J.S.A.* 43:15A–24, –24.1 and –25. *See also N.J.S.A.* 43:15A–57 (allowing members to purchase additional death benefit coverage and making option also available to employees receiving periodic benefits payable under workers' compensation pursuant to *N.J.S.A.* 43:15A–25.1). Furthermore, under the statute's plain language, the employer must continue payments until the compensation benefits terminate or until the employer retires. In comparison, the 1966 language required payment by the employer until the workers' compensation benefit terminated because the compensation benefit had to be exhausted *before* the employee was permitted to apply for disability retirement.

The Court's past approach in implementing the statute is consistent with the longstanding recognition that while an employee receives a workers' compensation award he or she remains an employee. *Eckert v. New Jersey State Highway Dept.,* 1 *N.J.* 474, 478, 64 *A.*2d 221 (1949) (discussing difference in relationship between employer and pensioner compared to that of employer and employee receiving workers' compensation benefits). While receiving workers' compensation benefits, the employee must be retained on the payroll. *N.J.S.A.* 34:15–44.

The Board of Trustees of PERS and the Appellate Division approached the question presented in this case from the perspective of whether the compensation award constitutes a payment "in lieu of normal compensation" or, alternatively, a payment to compensate the worker for her permanent partial disability. But, the Board's focus on the language "periodic benefits ... in lieu of his normal compensation" in *N.J.S.A.* 43:15A–25.1 distorts the longstanding views expressed by this Court concerning the statute's purpose and application. Work-disabled employees are to be able to achieve the most advantageous combination of workers'

compensation and pension benefits without offending our strong public policy against the award of double benefits for the same disability.

As noted, the legislative history of this statute has been the subject of study by this Court more than once and as recently as 1996. See *Bunk v. Port Authority of New York & New Jersey*, 144 *N.J.* 176, 183–184, 676 *A.*2d 118 (1996). We have applied *N.J.S.A.* 43:15A–25.1 to circumstances in which both temporary and permanent disability benefits were awarded. Indeed, the long payment periods of some permanent partial disability awards were specifically contemplated when the Court observed that the 1966 version of *N.J.S.A.* 43:15A–25.1 placed disabled employees in a difficult position because that version of the statute required exhaustion of all workers' compensation benefits before an application for a disability pension could be approved. See *Conklin, supra,* 73 *N.J.* at 203, 373 *A.*2d 996. No interpretation of the statute by this Court ever has suggested a limited reading of the obligations of *N.J.S.A.* 43:15A–25.1 based on an assessment of whether the compensation award replaces the worker's salary or compensates the worker for her physical injury, and we expressly disapprove of such an application.

We read the inclusion of the language "in lieu of … normal compensation" as clarifying only ·the process by which pension contributions are to be made for an employee. If the employee has returned to work and is receiving salary, even if the employee also is receiving a permanent partial disability award at the same time, normal pension procedures would govern employee salary deductions and employer contributions to the pension system on account of that employee. If the employee is not receiving salary and is receiving only workers' compensation periodic benefits, then pursuant to *N.J.S.A.* 43:15A–25.1 the employer must pay both the employer's and the employee's pension contributions. We reject the Board's approach distinguishing an employer's obligation under *N.J.S.A.* 43:15A–25.1 based on the type of workers' compensation benefit awarded. We conclude that petitioner's

employer had a statutory obligation to make pension contributions on her behalf. The question next presented is whether that obligation was terminated by petitioner's discharge for unauthorized absence from work. ·

### IV.

As noted, petitioner was terminated and the Merit System Board's affirmance of that termination was not appealed. Under those circumstances we need not inquire further into the validity of that termination, notwithstanding its apparent close connection to petitioner's disability and the fact that she had filed for and was awaiting action on her workers' compensation claim at the time her employer instituted removal proceedings against her.

Our review of the statute, and our understanding of its objectives, leads us to conclude that *N.J.S.A.* 43:15A–25.1 does not afford a disabled employee any greater employment rights than those of any other public employee. It does not insulate an employee from a valid termination for reasons unrelated either to his or her disabling condition or to whether the employee has filed for or is receiving workers' compensation benefits. *N.J.S.A.* 34:15–39.1. Nor does a later awarded workers' compensation benefit reinstate a validly terminated, or voluntarily resigned, former employee to active employee status.

Although previously we had not had occasion to address the termination or involuntary retirement of an employee who is receiving workers' compensation benefits and its impact on an employer's obligation under *N.J.S.A.* 43:15A–25.1, the Appellate Division has considered those issues. In *Mercer County, supra,* 193 *N.J.Super.* at 229, 473 *A.*2d 107, the Appellate Division considered whether *N.J.S.A.* 43:15A–25.1 impliedly prevented a public employer from initiating an involuntary disability retirement proceeding, pursuant to *N.J.S.A.* 43:15A–42, regarding a fifty-seven-year old employee. The employee was eligible for an ordinary disability retirement but preferred continuation of her workers' compensation benefits for total and permanent disability

until she reached age sixty and would be eligible for an age and service retirement pension. Receipt of an age and service retirement would not have precluded continuation of workers' compensation benefits due to her total and permanent disability. *See Pisapia v. Newark,* 47 *N.J.Super.* 353, 136 *A.*2d 67 (Cty.Ct.1957) (*cited with approval, Smith, supra,* 57 *N.J.* at 374, 273 *A.*2d 24). *See also N.J.S.A.* 34:15–29 (amended in 1977 to codify principle).

In *Mercer County,* Judge Pressler wrote:

A public employer must be permitted to employ a full complement of employees who are physically able to perform their duties. The continued employment of a permanently and totally disabled worker is patently contrary to the public interest. The conflict between the public interest and the interest of the disabled employee is accommodated by the statutory provision according him a disability pension. It was never, however, the legislative intention to enlarge the scope of that accommodation by permitting a permanently and totally disabled employee to remain employed, at his option, until he exhausts workers' compensation benefits or qualifies for age and service retirement. We are persuaded that the amendment of *N.J.S.A.* 43:15A–25.1 does not express any contrary intention.

* * *

We therefore conclude that the textual focus [in *N.J.S.A.* 43:15–25.1] on the employee's option relates only to the disability retirement/workers' compensation problem by making clear that the employee need not make a binding election. Those textual references never purported to address the voluntary/involuntary alternatives provided for by *N.J.S.A.* 43:15A–42 and never intended in any way to affect the continued viability of the public employer's option to initiate an involuntary disability retirement. We therefore hold that *N.J.S.A.* 43:15A–25.1 does not constitute an implied repeal of part of *N.J.S.A.* 43:15A–42.

[193 *N.J.Super.* at 236–237, 473 *A.*2d 107.]

In *Szczepanik v. State, Dept. of Treasury,* 232 *N.J.Super.* 491, 557 *A.*2d 705, in a different setting, the Appellate Division considered whether a public employer was compelled pursuant to *N.J.S.A.* 43:15A–25.1 to make pension contributions on behalf of a work-disabled employee receiving periodic workers' compensation payments for temporary disability and permanent partial disability, but who was not eligible for an ordinary disability retirement due to her length of service. She had not yet achieved 10 years of service. Without inclusion of the employer contributions for workers' compensation benefits for the weeks of temporary disability

and permanent partial disability, Ms. Szczepanik would not have had the requisite 10 years of creditable service to entitle her to an ordinary disability retirement pension. See *N.J.S.A.* 43:15A–42.

In holding that the employer must make the pension contributions during the weeks Ms. Szczepanik received workers' compensation payments, the court referred to the plain language of *N.J.S.A.* 43:15A–25.1, which requires continuation of employer contributions until "the periodic benefits payable under the Workmen's Compensation Law are terminated or when the member retires." *Szczepanik,* 232 *N.J.Super.* at 495, 557 *A.2d* 705. The court noted that Ms. Szczepanik had been presented with the Hobson's choice of either submitting her resignation or facing termination proceedings, and that choice was offered in response to her request for an extension of sick leave without pay. *Id.* at 496, 557 *A.2d* 705. The Appellate Division concluded that it did not have to reach the "voluntariness" of the resignation she reluctantly submitted. Instead, the court pointedly stated that it would be

> anomalous to interpret [the] unambiguous provision [in *N.J.S.A.* 43:15A–25.1(a) quoted above] to permit the employer to circumvent it by merely firing the work-disabled employee because he or she is unable to perform the job.
>
> [*Id.* at 506, 557 *A.2d* 705.]

The Appellate Division decisions in *Mercer County* and *Szczepanik* correctly interpret *N.J.S.A.* 43:15A–25.1 and further the appropriate balancing of the public interest with the interests of the disabled employee, consistent with this Court's earlier opinions discussing the purpose of the statute. The observation in *Szczepanik* points out the unfairness of allowing a public employer to terminate, or coerce an involuntary resignation from, a partially disabled employee who is not yet able to return to work and who lacks enough creditable service to be eligible for an ordinary disability retirement.

While receiving workers' compensation benefits, a disabled employee unable to return to work is entitled by virtue of *N.J.S.A.* 43:15A–25.1 to insist that his or her active status continue so that

he or she can achieve enough creditable service to be eligible to receive an ordinary disability retirement pension. The public employer's interests are protected by the involuntary retirement provisions of *N.J.S.A.* 43:15A–42 that permit the employer to remove an incapacitated employee from the workplace if that employee has 10 years of service to his or her credit. Alternatively, if the worker is permanently and totally disabled and meets the requirements for an accidental disability retirement, the public employer may immediately pursue the involuntary retirement of the employee pursuant to *N.J.S.A.* 43:15A–43, regardless of the employee's years of service credit. In combination, these two statutory involuntary retirement mechanisms appear to provide ample protection for the public employer's interests. In any case, if those protections prove inadequate we expect that the Legislature will reexamine them. But, by operation of these involuntary retirement provisions, an employee who is qualified for a form of disability retirement can be removed without prejudice to the employee's right pursuant to *N.J.S.A.* 43:15A–25.1 to seek to maximize receipt of compensation and retirement disability benefits.

Finally, we also note that nothing in *N.J.S.A.* 43:15A–25.1 suggests that an employer is prohibited from terminating an employee, or executing a reduction in force eliminating an employee's position, merely because an employee receives a workers' compensation award, so long as the employee has not been discharged simply because he or she has claimed workers' compensation benefits or because he or she remains disabled from returning to service. *N.J.S.A.* 34:15–39.1; *Novak v. Camden Co. Health Services Center Board,* 255 *N.J.Super.* 93, 604 *A.*2d 649 (App.Div.1992) (holding public employer may execute reduction in force resulting in elimination of position of employee receiving workers' compensation disability benefits).

Thus, we view the outcomes in both *Mercer County* and *Szczepanik* as consistent with the legislative objective of protecting the disability benefits of work-disabled employees without allowing

double recovery of benefits for the same disability. Importantly, neither decision applied *N.J.S.A.* 43:15A–25.1 in a manner that jeopardized the public interest in facilitating a public employer's ability to maintain an efficient and able-bodied workforce.

## V.

Here, petitioner had no clear basis on which to guide her actions during the critical time when she had filed and was awaiting the outcome of her workers' compensation claim, and while she was awaiting the Merit System Board's decision concerning her termination, which was not rendered until August 1996. While waiting for her workers' compensation application to be resolved, she eventually filed for an accidental disability retirement. Shortly thereafter she was awarded both temporary and permanent partial workers' compensation benefits. Now, as a result of her appeal of this matter, the question of an employer's obligation to make pension contributions during the period of payment of compensation benefits for a work-disabled employee is settled. All of those circumstances militate in favor of requiring petitioner's public employer to comply with our interpretation of *N.J.S.A.* 43:15A–25.1's requirements. In this unique instance, where the question of an employer's obligation was unsettled and before the Board had promulgated any regulation in this area to guide public employees and employers, we believe she should receive the benefit of employer contributions for the weeks she was awarded permanent partial disability benefits, whether validly discharged or not.

We often have afforded a plaintiff who successfully advances a rule of law the benefit of that ruling. Although judicial decisions normally are not retroactive, if we did not reward successful litigants for the diligent pursuit of modifications in the law, we might deter correction or expansion of our jurisprudence. *See, e.g., Darrow v. Hanover Township,* 58 *N.J.* 410, 278 *A.*2d 200 (1971) (discussing whether abrogation of spousal immunity, applied to successful litigant in *Immer v. Risko,* 56 *N.J.* 482, 267

A.2d 481 (1970), should receive further retrospective application). In *Darrow* we explained:

> We applied *Immer* retrospectively to the parties in that case because we believed that the plaintiff and cross-claimant should have been rewarded for their efforts in challenging the immunity doctrine; purely prospective rulings do not provide any inducement for litigants to challenge common law doctrines.

[58 *N.J.* at 420, 278 *A.*2d 200.]

In our view, petitioner is entitled to receive the benefit of prevailing in her contention that a public employer must continue pension contributions on behalf of a work-disabled employee throughout the duration of a permanent partial disability award. Prospectively, we presume that the PERS Board will promulgate a new regulation, in accordance with this decision, to properly guide public employers and employees in the future.

The PERS Board is directed to require that pension contributions on petitioner's behalf be made by her employer for the duration of her permanent partial disability award. Further, the PERS Board is directed to treat as timely filed petitioner's application for an accidental disability retirement pension. That application should therefore be reviewed on its merits.

The judgment of the Appellate Division is reversed and the matter remanded to the PERS Board for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LaVECCHIA—7.

*Opposed*—None.