SMALL, P.J.T.C.
This case requires the court to determine when the New Jersey Transfer Inheritance Tax, N.J.SA. 54:33-1 to 54:36-7, becomes due and payable on a post-death payment in settlement of a pre-death liability to the decedent. In this case, that determination will enable the court to decide how much interest the plaintiffs estate owes on the tax attributable to that settlement payment. The precise issue in this case is whether interest should accrue from February 28, 2003 (two months after the date of the receipt of the payment on December 31, 2002), pursuant to N.J.S.A. 54:36-5, or whether interest should accrue from February 18, 2001 (eight months after the date of the decedent’s death on June 18, 2000), pursuant to N.J.S.A. 54:35-3. For the reasons discussed below, I have determined that interest should run from the earlier date, eight months after the date of the decedent’s death, despite the fact that the Frost Estate did not receive the payment resulting from the malpractice of the decedent’s attorney which occurred prior to her death until two and a half years after her death.
Plaintiff, the decedent’s estate (the “Estate”), and defendant, Director, Division of Taxation (the “Director”) have filed cross-motions for summary judgment. R. 4:46-2. There are no dispute ed issues of material fact and resolution of this matter by way of motions for summary judgment is, therefore, appropriate. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995).
*539 Plaintiff asserts that monies awarded pursuant to a malpractice claim arising before the decedent’s death, but not discovered and awarded until after her death should be considered “anticipated property,” that is, analogous to a contingent future estate. In that case, the tax would be due upon receipt by the Estate, and interest on the tax would not begin to run until two-months after the actual receipt of the property. N.J.S.A. 54:36-5.
The Director argues that the property received in connection with the claim is not analogous to a contingent future estate, and therefore, the general rule governing interest and penalties requires that interest on unpaid inheritance tax be paid from eight months after the death of the decedent. N.J.S.A. 54:35-3.
The Estate has paid the full amount of taxes assessed including interest at six percent per annum from the earlier of the two dates and is now seeking a refund of the interest attributable to the period commencing eight months from the date of death of the decedent and ending two months after date of actual receipt of the post-death awards.
I.

The Award from the New Jersey Lawyer’s Fund for Client Protection

Arthur Martin, the attorney for Grace M. Frost (the “decedent”) and her late husband died in 1994. Prior to his death, Mr. Martin was of counsel to Thomas H. Everett, III, who, at the time, had offices in Caldwell, New Jersey. On June 15, 1994, Mrs. Frost, who was then 77 years old and in poor health, signed a document drafted by Mr. Everett, granting him a power of attorney over her affairs. On the same date, she entered into a retainer agreement for legal services with Mr. Everett. That agreement provided for an initial $50,000 retainer payment, exclusive of certain weekly fees that Mr. Everett charged Mrs. Frost.
From July 1994, until her death on June 18, 2000, Mrs. Frost resided in the hospital wing of the Eastern Star Nursing Home in Bridgewater, New Jersey. She left a last will and testament *540 dated September 28, 1994, which designated Mr. Everett as the executor of her estate. No substitute executor was named. The will was probated with the Surrogate of Somerset County and Mr. Everett duly qualified as the executor. The primary beneficiary of the estate named in the decedent’s will was C. Allen Frederick, who was to receive all but $10,000 of the estate. On February 20, 2002, over eighteen months after Mrs. Frost’s death, Mr. Frederick retained William Butler, Esq. to represent him because he had not heard from Mr. Everett about his inheritance. Mr. Everett retained Mark Tallmadge, an attorney, to represent him.
On March 7, 2002, pursuant to discussions between Mr. Butler and Mr. Tallmadge, Mr. Everett resigned as executor and attorney of the Estate. On March 27, 2002, the Somerset County Surrogate’s Court appointed Mr. Frederick administrator of the Estate. Twenty days later, the Supreme Court of New Jersey entered an order disbarring Mr. Everett by consent. The day after the order was issued, all of Mr. Everett’s files concerning the Estate were handed over to Mr. Butler.
Mr. Frederick, as the new administrator of the Estate, retained the services of an accountant (the “CPA”) to review all documents concerning the Estate, including: bank records, stock records, correspondence from financial institutions, tax returns, statements reflecting existing assets, Mr. Everett’s records associated with alleged legal services performed on behalf of Mrs. Frost, and computer printouts regarding Mr. Everett’s trust account associated with Mrs. Frost. The CPA drafted two accountings: one for the period of June 15, 1994 to June 18, 2000 (the date of Mrs. Frost’s death), and another for the period June 18, 2000 to December 31, 2001.
The CPA also generated a list of “embezzled assets,” concluding that Mr. Everett embezzled assets from Mrs. Frost while she was still alive in the amount of $485,497.83. (This amount was subsequently amended to $403,007.20). On numerous occasions, Mi'. Everett would deposit the proceeds of misappropriated assets into his attorney’s trust account and then draw on that trust account to compensate himself for legal services. This latter amount was *541 $267,550.75, and was in addition to assets grossing $424,600, which Mr. Everett took for legal services performed during the four years in which Mrs. Frost was confined to the nursing home. All of Mr. Everett’s embezzlement took place while Mrs. Frost was alive. The CPA found no evidence that Mr. Everett took anything from the Estate after Mrs. Frost’s death.
On June 25, 2002, (two years after the death of Mrs. Frost), the Estate filed an application with the New Jersey Lawyer’s Fund for Client Protection (the “Fund”), whose purpose is to reimburse clients, to the extent permitted by court rules, for losses caused by the dishonest conduct of members of the New Jersey bar. R. 1:28 — 1(a). On December 31, 2002, two and a half years after the death of decedent, the Fund issued a check in the amount of $250,000, payable to the Estate.
The Director assessed taxes on that sum. There is no dispute as to the amount of taxes assessed. The Director also assessed interest on the tax from February 18, 2001 (eight months after the death of Mrs. Frost) at the rate of six percent per annum. The Director originally charged interest from eight months after the date of death at ten percent per annum, as required under N.J.S.A. 54:35-3. This ten percent rate was later reduced to six percent after the Director determined that the judgments were the result of necessary litigation. Ibid.
II.

Additional Claims for Embezzled Funds, Fee Arbitration, and After Discovered Bank Accounts

The Estate filed a two-count complaint against Mr. Everett. Both counts were predicated upon Mr. Everett’s embezzlement of Mrs. Frost’s funds while she was alive and otherwise contended that Mr. Everett obtained the property of the plaintiff through false pretenses, embezzlement, and actual fraud while acting in a fiduciary position.
On June 25, 2002, the Estate filed a “Petition of the Estate of Grace M. Frost, Deceased” by Mr. Frederick, as administrator, *542 with the Supreme Court of New Jersey for release of restrained funds pursuant to R. 1:20-23. Pursuant to the order of disbarment, dated March 27, 2002, trust funds that had been held in Mr. Everett’s trust account were transferred to the Superior Court Trust Fund in the amount of $209,505.62. The Supreme Court has not yet responded to the Estate’s petition and the Estate might be entitled to and receive some of the trust funds.
On July 29, 2002, the Estate filed a fee arbitration request with the Essex County District V Fee Arbitration Committee alleging that Mr. Everett overcharged the Estate for legal services in the amount of $681,869 and requested that the Fee Arbitration Committee direct Mr. Everett to refund to the Estate that amount. As a result of that matter, an arbitration determination was issued finding that Mr. Everett had in fact overcharged the Estate for legal services in the amount of $681,869 and ordered that sum to be retened to the Estate. The Estate thereafter filed a notice of motion for judgment pursuant to count two of the complaint and R. l:20A-3 (e) (Essex County District V Fee Arbitration Determination) seeking judgment in the amount of $681,869. That motion resulted in a judgment entered in favor of the Estate in the requested amount. No part of the judgment resulting from the two-count complaint with regard to the embezzled funds that resulted in the $681,869 judgment has been paid.
On July 31, 2003, Mr. Butler filed an amendment to the initial Inheritance Tax Return filed by Mr. Everett as executor of the Estate, which was dated November 15, 2000. The amended return was audited, which resulted in the assessment and payment of additional taxes. The amended return was required because of (1) the $250,000 payment from the Fund and (2) newly discovered assets (three bank accounts totaling $81,923.05) which were discovered as a result of Mr. Butler’s issuing of discovery subpoenas in association with the civil complaint filed against Mr. Everett. There is no dispute that interest on the transfer inheritance tax attributable to these bank accounts is to run from eight months after the date of Mrs. Frost’s death.
*543 In response to the amended return, the auditor, on behalf of the Director, served upon Mr. Butler, a “Notice of Assessment as of 9/4/03” requesting additional inheritance taxes and associated interest and an amnesty penalty in the amount of $178,231.83.
On September 30, 2003, the Estate filed a protest and appeal with the Director regarding the notice of assessment. That protest, among other issues, advanced the following arguments: (1) no taxes were due on embezzled funds on the judgment until it was satisfied in whole or part; (2) the Estate was not subject to an amnesty penalty; and (3) any interest due on any property subject to New Jersey Inheritance Taxes shall accrue within two months after the Estate comes into enjoyment or possession of the property, in accordance with N.J.S.A. 54:36-5.
The Director responded to the protest and appeal with a final determination finding that: (1) interest was due at six percent per annum (the interest rate was reduced from the initial ten percent to six percent) on the tax on the $250,000 recovered from the Fund from February 18, 2001, eight months after the date of Mrs. Frost’s death; (2) the assessment of inheritance tax on the judgment for the excessive fees would be held in abeyance and removed from the September 4, 2004 assessment until such time as the judgment is partially or wholly satisfied at which time inheritance taxes would become due and interest a six percent per annum would be imposed from eight months after the date of the death of the decedent; and (3) the amnesty penalty was removed.
A notice of assessment dated December 8, 2003 was issued pursuant to the final determination indicating a balance due in the amount of $42,896.76, which inclvded interest at a rate of six percent per annum of $7,307.69. The Estate paid the Division of Taxation $42,896.76 under protest and advised the Division that it would be filing a complaint with the Tax Court of New Jersey regarding the calculation of interest.
The final determination requires the payment of interest on these sums from February 18, 2001 to the date that the inheritance tax was paid "with respect to any property received by the *544 Estate, regardless of the circumstances under which the assets were received or the timing of their receipt.
There are other issues which have arisen as to interest on taxes that may become due on the possible payment of embezzled funds or malpractice insurance with respect to those funds. However, determining when interest on tax payments attributable to those as yet undetermined amounts commences is not yet ripe for determination.
III.

Interest on the Tax on the $250,000 Received

Only the interest on the $250,000 the Estate received from the Fund on December 31, 2002 is at issue on.the motion currently before me.
The taxpayer has already paid the full amount of assessed tax due, $42,896.76, including six percent per annum interest, from eight months after Mrs. Frost’s death to the date of payment equaling $7,307.69 and is now seeking a refund of $4,500 of interest, representing interest for the two year period from eight months after the decedent’s death to two months after the receipt of the taxed assets.
Plaintiff seeks to prove that the taxed assets are analogous to a contingent future estate and therefore, the interest associated with inheritance taxes on the anticipated property that came into the Estate after death should accrue two months after the date on which the estate received such property in accordance with N.J.SA 54:36-5. Pursuant to plaintiffs argument, the dates that the taxes on the money received from the Fund became due would have been February 28, 2003 and the amount of interest due would be $2,807.69.
Defendant argues that it properly determined that N.J.SA 54:36-5 does not apply to compute interest on the inheritance tax due on the Estate assets acquired after the decedent’s death. Specifically, the Director contends that the Legislature expressed an intent to limit N.J.SA 54:36-5 to contingent estates; interest *545 on any other property not falling within the traditional definition of such is governed by the general provisions of N.J.S.A 54:35-3 (applying interest on unpaid inheritance taxes commencing eight months after the date of the death of the decedent). In the alternative, the Director argues that the tax should be imposed and interest begin to accrue as of the date of the receipt of the $250,000 from the Fund.
A.
In New Jersey, transfer inheritance taxes are due and payable, with certain exceptions, on the date of the death of the decedent unless otherwise provided by law.
Taxes under chapters 33 to 36 of this Title (54:33-1 et seq.), shall be due and payable at the death of the testator, intestate, grantor, donor or vendor, unless otherwise provided by said chapters 33 to 36; but, with respect to any sum recovered as compensation for death of a person caused by a m'ongful act, neglect or default, whether by award of damages or settlement of compromise, taxes thereon shall be due and payable on the date of said aivard or settlement.
[N.J.S.A 54:35-1 (emphasis added.) ]
Interest is imposed on the tax if it is paid more than eight months after the due date. The statute provides:
If such tax is not paid within 8 months after the date on which it became due and payable pursuant to R.S. 54:35-1, the tax shall bear interest at the rate of 10% per annum from the expiration of 8 months after the date on which it became due and payable to the date when the tax is paid ... or unless, by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, the decedent’s estate, or a part thereof, cannot be settled before the expiration of 8 months from the date on which said tax became due and payable, in which case only 6% per annum shall be charged from the expiration of such 8 months until the cause of delay is removed....
[N.J.S.A. 54:35-3.]
An exception to the due date for taxes is found in the specific provision of N.J.S.A. 54:35-1 regarding the payment of taxes on sums recovered for the wrongful death of a person, whether by award or settlement.
Additionally, N.J.S.A. 54:36-5 provides for other exceptions to the general rule that taxes are due and payable at the time of death. N.J.S.A 54:36-5 is found in Chapter 36 of Title 54 and addresses “Assessment, Collection and Enforcement of Taxes on Estates Subject to Future Interests.” This section applies to *546 contingent future interests and states that transfer inheritance taxes are due two months “after the person entitled to the property shall come into the enjoyment, seizin or possession thereof____” Ibid. If the tax is not paid at that time it will bear interest at ten percent until paid. ‘Ibid. The section provides, in part:
All other taxes levied and assessed as directed in said sections 54:36-3 and 54:36-4, and all taxes on property which may be transferred to the residuary legatees, heir or next of kin of a decedent, or which may revert to the heir of a decedent by reason of the failure of a contingency upon which a remainder may be limited, shall be due and payable within two months after the person entitled to the property shall come into the enjoyment, seizin or possession thereof, and if not paid shall thenceforth bear interest at the rate of ten per cent per annum until paid.

[Ibid.]

B.
In the present case, although the Estate of Mrs. Frost and its administrator did not come into possession of the $250,000 award from the Fund until thirty months after Mrs. Frost’s death, the statute provides no exception for the application of the provision of N.J.S.A. 54:35-3.
Even though the malpractice and misappropriation of funds were not discovered until well after Mrs. Frost’s death, and the $250,000 award appeal’s to be less than the full amount of damages, and does not appear to include interest, because of the Fund’s limitation on individual awards, nothing in the statute provides for an exception to the general rule in this circumstance. As indicated above, the Estate has several additional pending claims because of Mr. Everett’s malfeasance. Some of those claims may bear interest from the date of his actions. The Estate and the beneficiaries would theoretically be entitled to interest from the date of malfeasance to the date of compensation. Similarly, the Estate was entitled to interest on the after discovered bank accounts earned by the Estate after the decedent’s death. Thus, the six percent interest imposed by the statute appears to be designed to recapture for the State that interest.
Although the court understands the logic and fairness of plaintiffs argument that a tax on an asset should not be due until the *547 estate has actual possession or an established right of possession of that asset, the legislative design does not follow that logic. The overriding goal in interpreting a statute is to determine the Legislature’s intent. James v. Bd. of Trustees of the Pub. Employees’ Ret. Sys., 164 N.J. 396, 404, 753 A.2d 1061 (2000). To determine the intent of the Legislature, we first look to the plain meaning of the words of the statute. Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999); Nat’l Waste Recycling, Inc. v. Middlesex County Improvement Auth., 150 N.J. 209, 223, 695 A.2d 1381 (1997). The statute in this matter describes the situations in which taxes will not be due and payable at the death of the decedent, and in which interest will begin to accrue after the standard eight month grace period. As noted above, the statute expressly provides exceptions for wrongful death settlements and contingent future estates. In this case, the interest is a post-death settlement award for pre-death attorney malpractice and misappropriation of funds. Plaintiffs argument that these funds are considered contingent future estates covered under N.J.S.A 54:36-5 is incorrect. A plain reading of that provision indicates that it only applies to interests created by instruments. First, the section applies to taxes due under N.J.S.A. 54:36-3 and N.J.S.A. 54:36-4. Both sections only consider estates created by instruments. N.J.S.A 54:36-3 states that it applies “[w]hen an instrument creates an executory devise or an estate in expectancy of any kind or character which is contingent or defeasible----” (Emphasis added). Similarly, N.J.S.A. 54:36-4 applies only “[w]hen an instrument creates a power of appointment, the life estate, or estate for a term of years.... ” (Emphasis added). Second, the section applies to “all taxes on property which may be transferred to the residuary legatees, heir or next of kin of a decedent, or which may revert to the heir of a decedent by reason of the failure of a contingency upon which a remainder may be limited____” Ibid. This language, read together and in pari mate-ria with the reference to the other sections of this chapter evidences an intent by the Legislature to limit the applicability to contingencies created by instruments and not post-death settlements.
*548 Furthermore, considering the express exceptions to the date taxes become due and payable and interest begins to accrue, the court is guided by the maxim expressio unius est exclusio alterius (expression of one thing suggests the exclusion of another left unmentioned). It is a common canon of statutory construction that when the Legislature provides for an exception, matters that do not fall within the exception are excluded. See Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112, 853 A.2d 940 (2004) (finding that when the Legislature, in amending the Comparative Fault Act, expressly permitted a plaintiff to recover an insolvent defendant’s portion of fault from the remaining defendants in an environmental tort action, but omitted such a provision for other causes of action, the Legislature intended to preclude recovery in other actions). See also GE Solid State, Inc. v. Director, Division of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993) (finding that Legislature’s use of words in one section of statute indicated that omission of the same words in another section was intentional).
The court is aware of the limits of this rule and that “this maxim is merely an aid in construction ... [and][t]he final question is whether in a given context an express provision with respect to a portion of an area reveals by implication a decision with respect to the remainder. The issue is one of intention. The answer resides in the common sense of the situation.” Reilly v. Ozzard, 33 N.J. 529, 539, 166 A.2d 360 (1960). “Perhaps more accurately, it usually serves to describe a result rather than to assist in reaching it.” Ibid.
The Legislature has already provided for situations in which taxation of post death settlements would not be due until the date of the settlement. As noted above, N.J.S.A. 54:35-1 provides for a deferred due date for transfer inheritance taxes for wrongful death awards or settlements. The Legislature amended that section of the statute in 1978 to include only these types of settlements. L. 1978, c. 172. These are the only settlements that the Legislature included in the exception. If the Legislature intended to include post-death settlements for attorney malpractice it could have done so.
*549 Finally, if, as the plaintiff contends, the post-death settlements are considered contingent future estates covered under N.J.S.A. 54:36-5, then the section excluding taxation on wrongful death settlements until the payment is received would be unnecessary. It is a common tool of statutory interpretation that courts should avoid a “construction that will render any part of a statute inoperative, superfluous, or meaningless.” State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991) (citing N. Singer, Sutherland Statutory Construction § 46.06 (Sands 4th ed.1984)). Plaintiffs interpretation would render the provision excluding wrongful death settlements added in 1978 superfluous, as it would already have been covered under the section regarding contingent future estates.
Ultimately, the court finds that no specific exception is provided for taxes due on after discovered assets: in this case, the liability of the disbarred attorney to the decedent and her estate. If the Legislature wishes to change the rules regarding post-death settlements it may. This court is not free to do so.
For the reasons discussed above, defendant’s motion for summary judgment is granted and plaintiffs motion is denied. Therefore, the determination of the Director is affirmed and interest on the $250,000 settlement from the Fund should begin to accrue eight months after the date of death of the decedent. The plaintiffs claim for a refund is denied.
With respect to interest on the tax on the after discovered bank accounts, there is no dispute that interest should run from eight months after the death of the decedent.
With respect to all other interest and taxes to be paid with respect to other payments to be received by the Estate, the motions are denied as not ripe for determination.